Daniel **NELSON, et al., Plaintiffs,**

v.

**INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL AND ORNAMENTAL IRON WORKERS, Defendant.**

Civ. A. No. 87–0874–OG.

United States District Court, District of Columbia.

Jan. 15, 1988.

---

Paul Alan Levy and Alan B. Morrison, Public Citizen Litigation Group, Washington, D.C., for plaintiffs.

Victor VanBorg, San Francisco, Cal., and Jules Bernstein and Linda Lipsett, Washington, D.C., for defendant.

## MEMORANDUM

GASCH, Senior District Judge.

Alleging violations of their statutory quasi-first amendment rights under section 101(a)(2) of the Labor Management Report-

ing and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. § 411(a)(2), plaintiffs seek declaratory judgment from this Court that section 26 of article XXI of the constitution of the International Association of Bridge, Structural and Ornamental Iron Workers ("International") is invalid. Further, plaintiffs demand that defendant be ordered to notify all its members of that judgment through its newsletter "The Ironworkers." When the parties were last before this Court at a calendar call, they agreed that all issues in the case could be resolved through cross-motions for summary judgment.

## FACTUAL BACKGROUND

Two plaintiffs in this action, Daniel Nelson and John McClusky, are members respectively of Locals 505 and 627 of the International. The third plaintiff is Local 505, which is a local union of the International and, like the International, a labor organization within the meaning of the National Labor Relations Act and the LMRDA. The parties' dispute arises from article XXI, section 26, of the International's constitution, which provides:

No Local Union shall circulate, publish or communicate to another Local Union or to members of the [International] any statement reflecting on the character, official conduct or good repute of any officer or member of the [International], or relating to matters of general interest to the membership, or resolutions to the International Convention, or requesting financial aid without first submitting the

same to the General Executive Board and obtaining its approval.

Sometime in early 1986, plaintiff Nelson attempted to communicate with another Local of the International concerning a proposal he intended to make at the International's 1986 convention. Shortly after his speech began, Nelson was silenced by that Local's president, who ruled that section 26 of the International's constitution precluded this sort of communication. Nelson's proposal was rejected at the 1986 convention.[1] These events constitute the alleged injury to Nelson and a violation of section 101(a)(2).

Plaintiffs further contend that Local 505 was injured when its request for permission to communicate regarding a 1986 convention proposal was apparently ignored by the International's General Executive Board ("GEB"). As a result of the GEB's failure to respond to Local 505's request, the Local refrained from communicating with other locals, fearing disciplinary action for violation of section 26.[2] Finally, McClusky contends that he remained silent despite a desire to communicate because he also feared reprisal from the International for communicating without receiving the permission required under section 26 and expected that the International would not grant him that permission.[3] In response, defendant apparently contends that if plaintiffs remained silent, they did so at their own choosing and not because of anything that the International did.[4]

### Interpretation of Section 26

A substantial dispute of fact in this case concerns the International's interpretation

1. Among many other proposals proffered at the 1986 convention was one by Local 627, providing that section 26 be deleted from the constitution. The Grievance Committee of the International, through which this proposal apparently arose, recommended that the section be retained. Accordingly, the convention as a whole voted to reject Local 627's proposal.

2. It is also worth noting that Local 505 appealed to the International's General Executive Council from the GEB's failure to respond to the Local's request for permission to communicate. As part of that appeal, Local 505 urged the Council to delete section 26 from the International's constitution pursuant to its own authority under article V, section 7(a). The result of this appeal

is disputed in that defendant objects to plaintiffs' statement that the Council refused to take this action. Nevertheless, defendant offers no counterstatement as to the disposition of Local 505's appeal.

3. Apparently, McClusky was involved in litigation against the International in which the International prevailed over McClusky's and Local 627's demand for injunctive relief.

4. Defendant does not deny and offers no explanation for its failure to respond to Local 505's request for permission to communicate. Further, no explanation can be gleaned from defendant's statement of facts or memoranda.

of section 26. Citing the transcript of the International's 1986 convention, plaintiffs insist that "Section 26 is for the express purpose of preventing unwarranted attacks of a personal nature on officers and members of [the International]." Plaintiffs' Exhibit 4 (Statement of Committee Chairman Worley, Aug. 7, 1986).

Defendant has responded with an affidavit from the General President of the International, Juel Drake. As summarized by defendant's counsel, the General President justifies section 26 on four grounds:

1. A desire to prevent subversion of the due process protections contained in the trial and charges procedures of the [International's] Constitution;

2. A desire to resolve disputes between Local Unions internally, and to prevent knowledge of those disputes from getting into the hands of employers and others who are not friendly to the Union which could then be used against the best interests of the Union and its members;

3. To prevent knowledge of conflicting interpretations of collective bargaining agreements between Local Unions from becoming public, which conflicting interpretations could then be used against the best interests of the members of the [International] in grievance handling, negotiations and lawsuits; and

4. To prevent Unions *qua* Unions from abusing their access to membership mailing lists for solicitations of financial support and aid that may not be in the best interests of the members.

Defendant's Memorandum in Support of Cross–Motion for Summary Judgment at 14 (footnote omitted) ("Defendant's Memorandum"). Defendant adds that section 26 protects not only International officers but members as well. Consequently, defendant argues that plaintiffs' understanding of section 26 is "simply wrong."

Another element of the section 26 interpretation dispute focuses on the first phrase of section 26, which provides: "[n]o *Local Union* shall circulate, publish or communicate to another *Local Union or to members* of the Association" concerning a broad array of issues. (Emphasis added). The presence of plaintiffs Nelson and McClusky in this case indicates that plaintiffs believe that section 26 precludes communication by locals *and their members.*

Defendant notes, however, that section 26 states only that a local shall not communicate. The plain language of section 26, defendant argues, contradicts plaintiffs' interpretation and substantially undermines their contention that any union member, whether it is Nelson, McClusky or someone else, could be injured by section 26. Indeed, in his affidavit, General President Drake insists that section 26 has never been understood by the International to apply to communications by individual union members but only to official communications from locals as labor organizations.

Throughout their memoranda, the parties circumnavigate the question of the applicability of section 26 to individual union members. Plaintiffs offer as evidence only their own experiences and defendant offers only the affidavit of General President Drake, who contends consistently with statements made at the 1968 Convention of the International that no one has ever been denied permission to communicate under section 26. *See* Affidavit of Michelle Warren, Plaintiffs' Exhibit 5 (Transcript of 1968 Convention) (statement of Vice President Smith).

## DISCUSSION

Consistent with the somewhat murky factual context of this case, the legal issues are far from discrete. The preliminary issue of plaintiff Local 505's standing and the more substantial question of the validity of section 26 under the LMRDA are mutually dependent. Moreover, the factual dispute as to the correct interpretation of section 26 is pivotal in determining whether summary judgment is appropriate.

As discussed above, there is a preliminary factual issue regarding the standing of Local 505 to bring suit under the LMRDA. Defendant raises a substantial legal question as to the standing of Local 505 to assert rights under section 101(a)(2) of the LMRDA. That section provides:

Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments or opinions; and to express at meetings of the labor organization his views, upon candidates and elections of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: Provided, That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.

Defendant argues simply that Local 505 is not a "member of any labor organization" within the meaning of section 101(a)(2). Though plausible on its face, defendant's argument buckles under the weight of the definitional section of the LMRDA.

As with many statutory definitions, some indirection is employed to define important terms used in the LMRDA. The two definitions relevant to the Court's inquiry concern "person" and "member." Under section 3(d) of the LMRDA, 29 U.S.C. § 402(d), a person "includes one or more individuals [or] labor organizations." The term "member," "when used in reference to a labor organization, includes any *person* who has fulfilled the requirements for membership in such organization, and who neither has voluntarily withdrawn from membership nor has been expelled or suspended from membership." LMRDA § 3(*o*) (29 U.S.C. § 402(*o*)) (emphasis added).

Examining these same definitions, the court in *Local No. 1 (ACA), Broadcast Employees v. IBT,* 419 F.Supp. 263 (E.D. Pa.1976), held that a local is a member of the International under which it is chartered. The court also noted that the cases have held that a labor organization is a "person" with standing to sue under section 102 of the LMRDA.[5] Noting the absence of any authority discussing the standing of a local under the LMRDA, the *Broadcast Employees* court concluded that a local may assert rights under sections 101(a)(2) and (4) of the LMRDA. *Id.* at 272; *see Retail Clerks Union, Local 648 v. Retail Clerks International Association,* 299 F.Supp. 1012 (D.D.C.1969) (Gesell, J.) (formally organized group of officers from union locals is nothing more than collection of individuals and group may assert rights under section 101(a)(2)); *cf. International Union v. National Right to Work Legal Defense and Education Foundation, Inc.,* 590 F.2d 1139, 1145 (D.C.Cir.1978) (national and local unions assert rights of members under section 101(a)(4)); *Navarro v. Gannon,* 385 F.2d 512 (2d Cir.1967) (president of union local suing in individual and official capacities may assert rights under section 101(a)(2); court's discussion contemplates that president was asserting rights of local as an entity); *Parks v. International Brotherhood of Electrical Workers,* 314 F.2d 886, 920–22 (4th Cir.1963) (local has standing to assert claims of injury to members from defendant's revocation of local's charter); *Perry v. International Longshoremen's Association,* 638 F.Supp. 1441, 1448–49 (S.D.N.Y.1986) (same). *But see Laborers' Local Union 56 v. Laborers' International Union,* 93 L.R.R.M. 2895, 2896 (D.Conn.1975) (local may not assert rights under section 101(a)(5) since not a "member" of a union and LMRDA designed to protect rank and file); *Local Union No. 853 v. United Brotherhood of Carpenters and Joiners,* 83 L.R.R.M. 2759, 2765 (D.N.J.1972) (section 101(a)(5) not "meant to vest rights in locals as such, and ... focus is more properly directed towards the rights of union members").

■ Although there is contradicting authority concerning a local's standing under the LMRDA, an analysis of the definitions in section 3 reveals that a local is a member

---

**5.** Section 102 provides:

Any person whose rights secured by the provisions of this title have been infringed by any violation of this title may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate.

29 U.S.C. § 412.

of the International as the term "member" is used in section 101(a)(2). Authority to the contrary does not analyze the definitions and cites no authority for the proposition that locals do not have standing. Consequently, Local 505 may assert claims under section 101(a)(2).

*Defendant's Argument that Section 26 Applies Only to Locals*

Linked to defendant's interpretation of section 101(a)(2) of the LMRDA is its argument that section 26 of the International's constitution does not apply to communications by individual members of the union. Instead, defendant argues that the section, by its very language, applies only to communications from locals *qua* locals. Despite some intricate semantic arguments by the parties concerning the affidavit of Juel Drake, General President of the International, it is apparent that Mr. Drake's position is that section 26 would be applied only to official communications of a local. Whether they be oral or written is irrelevant. The application of section 26 would be triggered by a communication that bears the imprimatur of the local.

█ There is little evidence available to the Court to make an independent determination of the historic interpretation of section 26 of the International's constitution. Plaintiffs cite some comments by a union official at the 1986 Convention which suggest, though not very strongly, that section 26 is primarily intended to prevent scurrilous attacks on the reputation of union officials. Such a purpose would be impermissible under section 101(a)(2). *See Petramale v. Local No. 17 of Laborers International*, 736 F.2d 13, 17 (2d Cir.1984) (101(a)(2) prohibits discipline of even libelous statements). Mr. Drake's affidavit, however, expressly contradicts this justification for the section and argues instead, as discussed above, that the section has several legitimate purposes.

█ The union's interpretation of its constitution, rules, or regulations is entitled to considerable deference. *Monzillo v. Bil-*

*ler*, 735 F.2d 1456, 1458 (D.C.Cir.1984); *Local 334 v. United Association of Journeymen*, 669 F.2d 129, 131 (3rd Cir.1982). The Court's role in suits under section 101 of the LMRDA is not to interpret the union's constitution or rules, but to consider whether the union's interpretation and application of the constitution or rule deprives members of the rights guaranteed by section 101. *Motion Picture & Videotape Editors Guild, Local 776 v. International Sound Technicians, Local 695*, 800 F.2d 973, 975 (9th Cir.1986); *Stelling v. I.B.E.W.*, 587 F.2d 1379, 1388 (9th Cir.1978) (court should not interpose own interpretation of union's constitution unless interpretation by union officials is unfair or unreasonable). Thus, as plaintiffs have tacitly admitted, the union's interpretation of section 26 must be accepted by the Court unless it is patently unfair or unreasonable.[6]

As a matter of linguistics, the union's interpretation of section 26 is plainly erroneous in one respect. General President Drake declares that the section applies only to communications by a local to a local as entities. Nevertheless, section 26 clearly states that communication to locals *or members* is prohibited. Consequently, this aspect of Mr. Drake's interpretation is rejected.

While Mr. Drake's interpretative error has little bearing directly on this case, since plaintiffs' claims concern communications *by* members and not *to* members, it does suggest that the panoply of justifications offered in his affidavit is of recent vintage. Indeed, the justifications offered in Mr. Drake's declaration are so implausible that one may conclude that each justification was contrived for the purposes of this litigation.

The basis for the first of these justifications is article XIX section 10 of the International's constitution which establishes a charges and trials procedure for disciplining union members and officials. The trial is conducted by the International's General

---

6. Cognizant of the law in this regard, plaintiffs argue that even if the union's interpretation of section 26 is accepted, the section violates the free speech provisions of the LMRDA.

Executive Council or one of its representatives. General President Drake argues that censorship of communications by locals is necessary to preclude these due process procedures from being infected with scurrilous and unfounded personal attacks on the member or official charged.

The Court appreciates the value of impartial and unprejudiced disciplinary proceedings. The purpose is to be commended but the mechanism is seriously flawed. The scope of section 26 is far broader than the narrow purpose of preventing communications that may taint the fairness of disciplinary proceedings. Appropriate, less inclusive language could easily be drafted if the purpose of section 26 were truly as Mr. Drake states it.

■ The second purpose for which Mr. Drake insists section 26 is necessary is to prevent employers or others hostile to the purposes of the union from acquiring information concerning intra-union disputes. Mr. Drake argues that it has been the experience of his union and others that communications between locals concerning the interpretation of collective bargaining agreements or other disputes may be used by employers to undermine the solidarity of the union and its effectiveness at the bargaining table. While this may be true, the value of section 26, as Mr. Drake interprets it, in deafening employers to the squabbles of union members is difficult to fathom. It would seem that communications from members or officials individually or as groups though not as a local would be equally harmful to the interests of the union as communication by the local officially. Again, the plain language of section 26 is vastly more broad than necessary to accomplish this purpose even if the purpose is legitimate.[7]

Finally, defendant alleges that section 26 is intended to prevent financial solicitations by locals which solicitations may be contrary to the interests of the International and its members. Mr. Drake contends that locals may abuse their access to union mailing lists and solicit members for financial contributions to causes that may not be in the best interests of the members. It is at least arguable that the union may properly prevent its locals from using the union's mailing lists to solicit members for financial contributions. Indeed, the United States Court of Appeals for the District of Columbia Circuit has recently held that members have no absolute right to mailing list access. *Carothers v. Presser*, 818 F.2d 926 (D.C.Cir.1987). The *Carothers* opinion demonstrates that section 26 of the International's constitution is far broader than necessary to accomplish the limited purpose of preventing financial solicitations by locals. In fact, the International need not address communications at all in its rule but only decline to release the mailing list to locals whose purpose is contrary to the lawful policies of the International.

*Union Democracy Under Section 101 of the LMRDA*

Citing documented instances of corruption, dishonesty, breach of fiduciary duty, and disregard of the rights of employees, Congress enacted the LMRDA to "bring to the conduct of union affairs and to union members the reality of some of the freedoms of expression that we enjoy as citizens by virtue of the Constitution of the United States." 105 Cong.Rec. 6472 (daily ed. Apr. 22, 1959), *reprinted in* 1 N.L.R.B., Legislative History of the Labor Management Reporting and Disclosure Act of 1959, at 1098 (statement of Senator McClellan). To achieve this purpose, Congress adopted an employees' "Bill of Rights" in Title I. Specifically addressing section 101(a)(2), the Supreme Court recently noted that Congress intended "to restate a princi-

---

7. When Congress enacted the LMRDA, it was reacting to well-documented instances of union corruption and malfeasance in union elections. 29 U.S.C. § 401(b) (1982); *see United Steelworkers of America v. Sadlowski,* 457 U.S. 102, 108–11, 102 S.Ct. 2339, 2343–45, 72 L.Ed.2d 707 (1982); *Hall v. Cole,* 412 U.S. 1, 7–8, 93 S.Ct. 1943, 1947–48, 36 L.Ed.2d 702 (1973). The fun-

damental purpose of section 101 is to inject a minimal amount of democracy into union politics. If, as Mr. Drake insists, section 26 is intended to stifle discussion of issues as to which union members disagree, it is plainly contradictory to the underlying purposes of the free speech provisions of the LMRDA.

ple of First Amendment value—the right to speak one's mind without fear of reprisal." *United Steelworkers of America v. Sadlowski,* 457 U.S. 102, 111, 102 S.Ct. 2339, 2345, 72 L.Ed.2d 707 (1982). The Court immediately noted, however, that Congress did not intend the scope of section 101(a)(2) to match that of the First Amendment. *Id.* Reiterating this warning with more precision, our Court of Appeals recently stated that:

> the statute sets forth certain *specific regulations* governing internal union affairs. In other words, "democracy" under the LMRDA is not merely a boundless ideal to be defined by the whim of any dissident voice; rather, the statutory notion of internal union democracy is precisely limited by the scope of the protections codified by Congress in the LMRDA.

*Carothers,* 818 F.2d at 929 (emphasis in original).

■ The *Carothers* decision is instructive in this case in at least two ways. First, it clearly sets forth the framework for analyzing claims under Title I of the LMRDA. Initially, "the Court must determine whether the union's conduct deprived the plaintiffs of a right *specifically enumerated* in the statute.... Once it has made a *particularized finding* that the union violated a right specifically enumerated in the statute, the Court may fashion a remedy tailored to the violation." *Id.* at 931 (emphasis in original). Thus, a free speech claim under Title I must assert deprivation of a right expressly granted in section 101(a)(2). Ancillary rights that may be inferred in a constitutional context may not be inferred in this statutory setting.

■ The second relevant teaching of *Carothers* is that rights specifically enumerated in section 101(a)(2) are to be protected as though granted by the First Amendment. *See, id.; Steelworkers,* 457 U.S. at 111, 102 S.Ct. at 2345 (section 101(a)(2) restates First Amendment values). Thus, the Court may grant "such relief (including injunctions) as may be appropriate." 29 U.S.C. § 412. In addition, First Amendment doctrines should guide the

Court's explication of rights specifically enumerated in section 101(a)(2). *Steelworkers,* 457 U.S. at 111, 102 S.Ct. at 2345.

Defendant relies heavily on *Carothers* for the proposition that "there is no 'specifically enumerated' right in the statute guaranteeing to Local Unions Title I rights." Defendant's Memorandum at 17. The import of defendant's position appears to be that since section 101(a)(2) does not use the word "locals" it does not apply to locals and, therefore, *Carothers* requires that plaintiffs' claims be denied.

If the Court were to agree, this proposition would set a precedent for statutory draftsmanship that is unacceptable. As noted above, the definitional sections of the LMRDA include local unions within the definition of member for the purposes of Title I. It is impractical, if not unnecessary, to repeat this definition each time the word member is used. *Carothers* stands not for the proposition that claimants under Title I must be specifically identified in the statute but that the rights which form the basis of the claim must be specifically enumerated in the statute. The right of free speech is the foundation of Title I.

*The Question of Standing Revisited*

Under section 102 of the LMRDA, any person whose section 101 rights have been "infringed" may bring an action for any relief that is appropriate. 29 U.S.C. § 412. The question of standing in this case under section 102 reduces simply to whether plaintiffs' 101(a)(2) rights have been infringed. Each of the plaintiffs alleges that he or it was silent because of section 26 of article XXI of the International's constitution. As to plaintiffs Nelson and McClusky, no action by the International itself is alleged to have silenced their speech; McClusky's own interpretation of section 26 induced him to remain silent and the interpretation of section 26 by the President of a neighboring local frustrated Nelson's attempts to discuss his 1986 convention proposal. Only Local 505 claims that the International was directly responsible for an infringement of its free speech right. The International's misdeed was its failure to act—its failure to approve Local

505's request to communicate regarding the 1986 convention proposal.

The degree of injury necessary to create standing under section 102 of the LMRDA appears to be a question of first impression.[8] Inasmuch as this case involves an unquestionably overbroad regulation of speech, reference to the overbreadth doctrine of the First Amendment is appropriate.

While the principle of standing is rooted in the Article III case or controversy requirement, it also reflects "prudential considerations that limit the challenges courts are willing to hear." *Secretary of State of Maryland v. Joseph H. Munson Co.*, 467 U.S. 947, 955, 104 S.Ct. 2839, 2846, 81 L.Ed. 2d 786 (1984). The normally stringent requirement of injury in fact has been relaxed, however, in the First Amendment context because:

> [i]t has long been recognized that the First Amendment needs breathing space and that statutes attempting to restrict or burden the exercise of First Amendment rights must be narrowly drawn and represent a considered legislative judgment that a particular mode of expression has to give way to other compelling needs of society.

*Broadrick v. Oklahoma*, 413 U.S. 601, 611–12, 93 S.Ct. 2908, 2915, 37 L.Ed.2d 830 (1973). The leeway allowed by the Court to persons alleging First Amendment violations has been substantial. Thus, attacks on overly broad statutes have been permitted by persons whose speech might not be protected under the First Amendment but who have been punished for that speech under such statutes. *Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620, 634, 100 S.Ct. 826, 834, 63 L.Ed.2d 73 (1980) ("a litigant whose own activities are unprotected may nevertheless challenge a statute by showing that it substantially abridges the First Amendment rights of other parties not before the Court"); *see*

*Dombrowski v. Pfister*, 380 U.S. 479, 486, 85 S.Ct. 1116, 1120–21, 14 L.Ed.2d 22 (1965).

> Litigants, therefore, are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the Court to refrain from constitutionally protected speech or expression.

*Broadrick*, 413 U.S. at 612, 93 S.Ct. at 2916; *see Munson*, 467 U.S. at 956, 104 S.Ct. at 2847.

In *Munson*, a professional fundraiser asserted a challenge to a Maryland statute that prohibited charitable organizations from paying as expenses for fundraising more than 25 percent of the amount raised. *Munson*, 467 U.S. at 950, 104 S.Ct. at 2843. Munson complained that it ordinarily charged more than 25 percent as a fee for its professional fundraising activities and that the state had threatened enforcement of the statute against it. No actual enforcement had occurred. *Id.* at 950–51, 104 S.Ct. at 2843–44. Despite the absence of any injury in fact, the Court permitted Munson to challenge the statute on its face as substantially overbroad. The Court struck down the percentage limitation statute because:

> [w]here ... a statute imposes a direct restriction on protected First Amendment activity, and where the defect in the statute is that the means chosen to accomplish the state's objective are too imprecise, so that in all its applications the statute creates an unnecessary risk of chilling free speech, the statute is properly subject to facial attack.

*Id.* at 967–68, 104 S.Ct. at 2852–53 (footnote omitted).

The foregoing discussion makes clear that prudential standing limitations must yield when statutory imprecision threatens

---

**8.** Defendant's brief implies that there is some standing problem under section 102 when it discusses the absence of any real injury to any of the plaintiffs. Nevertheless, defendant's brief cites no authority either under the LMRDA or first amendment law concerning the nature of

the injury necessary to create standing for redress of a free speech right. Similarly, plaintiffs superficially address the standing issue by emphasizing that each of the plaintiffs was silenced in some way by section 26. Again, no authority is cited.

"that protected speech of others may be muted and perceived grievances left to fester because of the possible inhibitory effects of overly broad statutes." *Broadrick*, 413 U.S. at 612, 93 S.Ct. at 2916.

■ The applicability of these principles to the instant case is inescapable. Even if General President Drake's interpretation of section 26 is accepted—that it applies only to communications by locals as locals—the section involuntarily imposes a code of silence regarding any matter as to which union members might communicate.[9] Accepting Mr. Drake's somewhat questionable justifications for section 26, the conclusion seems inescapable that section 26 is substantially overbroad; indeed, it is hard to imagine any language that could expand the scope of section 26. *See Munson*, 467 U.S. at 965–66, 104 S.Ct. at 2851–52 (statute is overbroad when "there is no core of easily identifiable and constitutionally prescribable conduct that the statute prohibits"); *Schaumburg*, 444 U.S. at 637, 100 S.Ct. at 836 (constitutionally unprotected speech may be prohibited only "by narrowly drawn regulations designed to serve ... [legitimate] interests without unnecessarily interfering with First Amendment freedoms").

■ While plaintiffs' allegations of injury are minimal, they have standing to challenge section 26. Even under Mr. Drake's interpretation, the section is so grossly overbroad and so plainly violates section 101(a)(2) of the LMRDA that no "judicial prediction or assumption" is necessary to ascertain that free speech will be chilled. *Broadrick*, 413 U.S. at 612, 93 S.Ct. at 2916. Further, denying these plaintiffs the opportunity to vindicate their rights would perpetuate the chilling effect of section 26 on the rights of all members of the International. The warnings in *Steelworkers* and *Carothers* that section 101(a)(2) is merely a subset of the body of First Amendment law does not contradict this result. The free speech rights threatened by section 26 are specifically enumerated in section 101(a)(2) and are the core of the notions of democracy with which Congress was concerned when it enacted the LMRDA.

To be true to the analytical framework of *Carothers*, the question must be asked whether section 26 is a "reasonable" rule that the International may adopt to prevent "interfere[nce] with its performance of its legal or contractual obligations." 29 U.S.C. § 411(a)(2) (LMRDA section 101(a)(2)). The answer to this question is self-evident from the foregoing discussion. A rule that effectively precludes speech of any kind by a local union cannot be a reasonable rule whose purpose is restricted to the facilitation of the performance of the International's obligations.

## CONCLUSION

Summary judgment is appropriate when no genuine issues of material fact exist and judgment may be entered as a matter of law. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The parties' only substantive factual disagreement concerns the interpretation of section 26. The disagreement, however, is not material to resolution of this case. Even if defendant's interpretation is accepted, section 26 plainly violates the free speech provisions of Title I of the LMRDA. Consequently, judgment in the plaintiffs' favor is appropriate.

---

9. The very language of section 26 bars statements relating to "the character, official conduct or good repute of any officer or member of the Association, or relating to *matters of general interest to the membership, or resolutions to the International convention.*" (Emphasis added). Despite defendant's attempt to limit the scope of this section *post hoc*, the language effectively bars all communication by a local except with permission from the International.