**UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, DRESDEN LOCAL NO. 267, Plaintiff–Appellant,**

v.

**OHIO CARPENTERS HEALTH AND WELFARE FUND, and Joseph T. Ivan, Defendants–Appellees.**

No. 90–3187.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 28, 1990.

Decided Feb. 25, 1991.

---

Andrew S. Lipton (argued), Manley, Burke & Fischer, Cincinnati, Ohio, Philip S. Phillips, Gottlieb, Johnston, Beam & Dal, Ponte, Zanesville, Ohio, for plaintiff-appellant.

Frederick G. Cloppert, Jr. (argued), Cloppert, Portman, Sauter, Latanick & Foley, Columbus, Ohio, for defendants-appellees.

Before MILBURN, BOGGS and SUHRHEINRICH, Circuit Judges.

BOGGS, Circuit Judge.

Dresden Local No. 267 of the United Brotherhood of Carpenters and Joiners of America ("Local 267" or "the local") brought this action in the Court of Common Pleas of Morgan County, Ohio, charging that the Ohio Carpenters Health and Welfare Fund and its administrative manager, Joseph T. Ivan, ("Welfare Fund" or "defendants") had wrongfully paid funds belonging to the local to the South Central Ohio District Council ("SCODC" or "the district council"). Plaintiff sought damages in the amount of $45,000, an injunction requiring defendants to direct payments to the local in the future, and an accounting of funds improperly paid to the district council in the past.

Defendants removed the case to the United States District Court for the Southern District of Ohio, where it was assigned to the Honorable George C. Smith, who was already handling *United Brotherhood of Carpenters and Joiners of America, Dresden Local 267 v. United Brotherhood of Carpenters and Joiners,* Case No. C2–88–499 (*Local 267 I*), and *United Brotherhood of Carpenters and Joiners of America, Dresden Local 267 v. South Central Ohio District Council,* Case No. C2–89–0467 (*Local 267 II*). All three cases dealt with the reorganization, more fully discussed below, of Ohio locals, including Local 267, by the United Brotherhood of Carpenters and Joiners of America ("UBCJA" or "the international union"), Local 267's parent organization and the defendant in *Local 267 I.*

On July 27, 1989, Judge Smith held a conference on the status of *Local 267 II.* The other actions were also discussed. Judge Smith dismissed *Local 267 II* on September 12, 1989 and gave summary judgment for the defendants in *Local 267 I* on October 24, 1989. Attached to the opinion and order granting summary judgment was an order to Local 267 to show cause by November 9, *i.e.*, within fifteen days, why its complaint in this case should not also be dismissed under Fed.R.Civ.P. 12(b)(6) for failure to state a claim on which relief could be granted. On November 8, plaintiff complied with the court's order in a memorandum opposing dismissal, in which it argued that its complaint stated a cause of action under 29 U.S.C.A. § 186(a) & (c). Defendants responded on December 4 with a memorandum supporting dismissal. Accompanying defendants' memorandum was the affidavit of Jack Noggle, the Secretary–Treasurer and Business Manager of the South Central Ohio District Council, in which he explained the relation between his organization, the defendants, and Local 267.

The court dismissed the plaintiff's action in an order dated January 30, 1990, relying in part on information from the Noggle affidavit. This appeal follows. Local 267 makes both substantive and procedural objections to the results below. Finding no error in the district court's judgment, nor anything of prejudice to the plaintiff in its proceedings, we affirm.

I

The background of this case is the January 1988 reorganization of Local 267 by the international union. Prior to the reorganization, the jurisdiction of some Ohio locals extended into West Virginia and Kentucky. Local 267 was within the Capital District Council and included millwrights as well as carpenters in its membership. The collective bargaining agreement between the Capital District Council and employers provided that "working dues" were to be collected by the employers from union members and "transmitted by each employer to a duly authorized point of collection." This "dues checkoff" system was authorized by section 45(c) of the constitution of the international union, which permitted local unions or district councils to collect dues in this way. Before reorganization, the Carpenters Central Collection and Administrative Agency was the designated recipient of payments from the employers. The agency would distribute the amounts collected to union pension and insurance funds, and to Local 267, among others. According to Noggle's affidavit, the bulk of the working dues collected from Local 267 members and subsequently transmitted to the local had been used to pay the business agent, who was an employee of the local before the reorganization.

After reorganization, Local 267 was shorn of its jurisdiction over out-of-state counties, and a separate local was created for the millwrights, leaving only carpenters in the local. The Capital District Council was dissolved and replaced by the South Central Ohio District Council, which employs Noggle as business manager. The bylaws of the new SCDOC provided that checkoff dues were to be paid to the district council by all members working within the council's jurisdiction, including, of course, the members of Local 267. A new agreement between the SCODC and employers, which went into effect when the previous contract negotiated by the Capital District Council expired on May 31, 1989, provided that employers were to remit the members' payroll deductions to a central collection agency designated by SCODC. A new entity, defendant Welfare Fund, was created to collect and redistribute checkoff dues, as the old Carpenters Central Collection and Administrative Agency had done. The Welfare Fund assumed these responsibilities in May 1988. Since June 25, 1988, defendant Welfare Fund has not paid Local 267 any of the checkoff dues collected from the local's membership. According to Noggle's affidavit, the reason for this is that before the reorganization, dues remitted to Local 267 were used primarily to pay the business manager, whom the local employed. After reorganization, the business manager was employed by the SCDOC.

Before any of these events had transpired, and not in connection with the reorganization, members of Local 267 had signed forms bearing the heading "Capital District Council," which "authorized and directed [their employers] to pay and remit to Carpenters Local No. 267 of the Capital District Council" dues deducted from the payroll. The execution of such "assignments" is required by 29 U.S.C. § 186(a) & (c) before an employer may remit to any labor organization union assessments deducted from employees' pay. While the reorganization was underway, Local 267 had its members sign new forms. The new documents bore the heading "Local 267 U.B. of C. and J. of A." and "authorize[d] and directe[d the employer] to pay and remit to Carpenters Local 267" the dues deducted from the member's pay. On the basis of these new forms, Local 267 maintains that the defendants have wrongfully remitted to the district council the checkoff dues of local members in violation of the pertinent statutes. Local 267 asserts further that it, not its membership, is entitled to the dues that the Welfare Fund has already paid to the SCODC and to any future dues collected from the membership of the local. Hence, it seeks damages from the Welfare Fund for sums it alleges were improperly paid to the SCODC not the local, and an injunction requiring the Welfare Fund to transmit to the local any sums received from the local's membership in the future.

## II

Local 267 does not dispute *per se* the validity of the collective bargaining agreement negotiated by the SCODC with the employers nor the propriety in general of the payroll deduction system the agreement authorized. Plaintiff's grievance is the Welfare Fund's redirection to SCODC of dues collected from its members, presumably pursuant to some past authorization by the members and formerly paid to Local 267, in violation of the authorization

forms, old and new, and without either the execution of new "assignment" forms by the members or a vote by the membership authorizing the redirection. Local 267 relies on the Labor Management Relations Act ("LMRA") § 302, 29 U.S.C. § 186, and the Labor–Management Reporting and Disclosure Act of 1959 (LMRDA) § 101, 29 U.S.C. § 411. The latter provides, in pertinent part, that

> the rates of dues and initiation fees payable by members of any labor organization in effect on September 14, 1959 shall not be increased, and no general or special assessment shall be levied upon such members except—
>
> (A) in the case of a local labor organization, (i) by majority vote by secret ballot of the members in good standing voting at a general or special membership meeting, after reasonable notice of the intention to vote upon such a question, or (ii) by majority vote of the members in good standing voting in a membership referendum conducted by secret ballot ...
>
> 29 U.S.C. § 411(a)(3).

The former provides, again in pertinent part, that

> [i]t shall be unlawful for any employer ... to pay ... any money or other thing of value ... to any labor organization ... which represents ... any of the employees of such employer ... [except] money deducted from the wages of employees in payment of membership dues in a labor organization: *Provided*, That the employer has received from each employee, on whose account such deductions are made, a written assignment....
>
> 29 U.S.C. § 186(a)(2) & (c)(4).

Local 267 argues that the redirection of dues at issue here violates either § 411, because it is an increase in dues not effected by a vote of the local's membership, or § 186, because "assignment forms" authorizing employee payments to the district council have not been executed.[1]

---

1. There is some question as to whether any issue arising under § 411 is properly before this court. In its reply brief, and again at oral argument, Local 267 denied that this is a § 411

case. In its memorandum opposing summary judgment, Local 267 argued only the § 186 issue. The opinion and order of the trial court did not mention § 411. Nonetheless, both Lo-

Without deciding whether Local 267 is correct that SCODC's decision to redirect dues violates either of these statutes, we hold that it has no standing to sue under § 411 and that it states no cause of action under § 186 against these defendants. The error pervading Local 267's position with respect to both statutes is that it attempts to derive rights inuring to its own benefit from statutory provisions creating procedural safeguards for the rights of individual union members.

### A

■ With respect to § 411, Local 267 claims that the district council's redirection of dues was a dues increase because prior to the redirection, local members had paid no dues to the district council; afterwards, all the checkoff dues were paid to it, thereby increasing the dues paid to the council from its zero base. We shall not address this dubious proposition in order to dispose of appellant's claim. Even if the dues of the local's members were raised, Local 267, which does not pay check-off dues, does not have standing to sue for a violation, if there is any in this case, of § 411.

LMRDA § 102, 29 U.S.C. § 412 authorizes the enforcement of § 411 by private lawsuit. It provides that any "person whose rights secured [by § 411] have been infringed by any violation [thereof]," may bring a civil action in a district court of the United States for such relief as may be appropriate. In determining who has standing to sue under § 412 and what claims may be brought, the controlling question is whom § 411 was to protect. *See, e.g., Finnegan v. Leu,* 456 U.S. 431, 435–40, 102 S.Ct. 1867, 1870–72, 72 L.Ed.2d 239 (1982) (holding, after consideration of statute's purpose, that protection of § 411 extends to plaintiff as member of union but not as employee charged with discretionary functions); *Cehaich v. Internat'l Union, United Automobile, Aerospace and Agricultural Implement Workers of America,* 710 F.2d 234, 249 (6th Cir.1983) (dismissal

cal 267's original appellate brief and its reply brief argue that the redirection of dues by the SCODC was a dues increase requiring a vote of

of complaint proper where plaintiff "was not statutorily entitled to the protections afforded in [§ 411(a)(5)]"). In general, the purpose of the statute is to provide "enlarged protection for members of unions paralleling certain rights guaranteed by the Federal Constitution, ... plac[ing] emphasis on the rights of union members to freedom of expression without fear of sanctions by the union, which in many cases included loss of union membership and in turn loss of livelihood." *Finnegan,* 456 U.S. at 436, 102 S.Ct. at 1870.

The question before us is whether it would advance the purposes of § 411, as formulated by the Supreme Court, to permit Local 267, a component organization within the SCODC and not a rank and file union member, to bring suit against the Welfare Fund in its own right and for its own benefit under § 412 as a "person" whose rights are secured by § 411. The issue of the standing of a component union organization to sue under § 412 was before this court in *Millwright Local No. 1079 v. United Brotherhood of Carpenters and Joiners of America,* 878 F.2d 960 (6th Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 407, 107 L.Ed.2d 373 (1989), a case which, like this one, arose out of the UBCJA's reorganization of its Ohio locals and was prosecuted by a component union organization rather than a rank and file member. In *Millwright Local No. 1097,* the issue was whether the challenged reorganization unfairly burdened the rights of members to vote and hold office within the union, in violation of §§ 185 & 411, the statutes before the court in this case. Finding nothing unfairly onerous to the union members in the reorganization, we did not reach the question of whether *Millwright Local No. 1097* had any standing at all to assert rights under § 411. Nonetheless, we intimated that we were disposed to answer the question in the negative. *See* 878 F.2d at 966–67. We now propose to decide that issue, treating the question as one of first impression in the circuit.

the membership. We shall treat the issue as properly raised.

We turn for guidance to *Finnegan* and *Cehaich*. In the former case, the plaintiffs were discharged from their posts as paid business agents after the incumbent local president, who had hired them and for whom they had campaigned, lost an election. The discharges were permitted by the local's bylaws. The plaintiffs claimed that being dismissed for supporting a losing candidate constituted discipline for exercise of their right of free speech and was thus forbidden under § 411(a)(1) & (2). The court rejected this claim, distinguishing between plaintiffs' rights as members of the union, which could not be prejudiced under § 411 by any retaliation on the part of the union leadership, and their rights to employment in appointed positions. *See generally* 456 U.S. at 435–39, 102 S.Ct. at 1870–72. In concluding that the latter were not within the protection of § 411, the court premised its reasoning on the finding that the overriding purpose of the LMRDA was "to ensure that unions would be democratically governed, and responsive to the will of the union membership as expressed in open, periodic elections." 456 U.S. at 441, 102 S.Ct. at 1873. It followed therefore that "[f]ar from being inconsistent with this purpose, the ability of an elected union president to select his own administrators is an integral part of ensuring a union administration's responsiveness to the mandate of the union election." *Ibid.*

In *Cehaich*, this court faced the question of whether a benefits representative, an unpaid, appointed union *officer*,—not an employee, as in *Finnegan*—could be dismissed from his position following his public challenge to the policies of the union president. On the basis of certain suggestions in *Finnegan, see generally* 456 U.S. at 441 n. 11, 102 S.Ct. at 1873 n. 11, the *Cehaich* plaintiff contended that only employees in a policymaking or confidential role were excepted from § 411 protection under the doctrine of that case. Therefore, he asked the court to remand his case to the trial court for further fact-finding on the nature of his duties as benefit representative for the purpose of determining whether they entailed either policymaking or a confidential relationship with the union

president. 710 F.2d at 238. The court declined to remand, distinguishing between the plaintiff's position as an ordinary union member and a union employee, and his position within the union's official hierarchy. The former is a source of statutorily protected rights. Whatever rights, if any, arise from the latter are not protected by § 411. 710 F.2d at 239. The court held that the dispositive question was "whether the employee can correctly be considered an instrumental part of the union administration." *Ibid.* Therefore, since plaintiff's position as a benefits representative made him a part of the administration, his status as a union official was not protected by § 411(a)(2). *Ibid.*

This holding was developed in the context of suits testing the rights of individual members. It rests upon a distinction between the rights of confidential and policy-making union employees and officers as ordinary union members, and their rights, if any, to tenure within the official hierarchy. The former are afforded statutory protection; the latter are not. These cases did not deal with a situation, where, as here, the dispute is between subunits within the union hierarchy.

A district court in this circuit faced this issue in *Commission House Drivers, Helpers, and Employee's Union Local 400 v. Teamsters Joint Council No. 41*, 595 F.Supp. 574 (N.D.Ohio 1984). In that case, control over members of plaintiff local had been transferred to another local by the Executive Board of the defendant, after those members had expressed dissatisfaction with the quality of the local's representation. Local 400 complained that divesting it of control over members without a reasonable hearing and other elements of due process was discipline in violation of 29 U.S.C. § 411(a)(5), which forbids punitive measures without such procedural safeguards. The court rejected this claim in granting summary judgment for the defendants. It did so by distilling from *Finnegan* and *Cehaich* the concept of officers and policy-making employees as components of the union's infrastructure. Thereby, it was able to liken the local to an

officer as a component of the union organization. *Commission House Drivers*, 595 F.Supp. at 577. According to the court, the LMRDA was intended to protect rank and file union members, but a local, just as a union officer, is a higher component of the union's organizational structure, not a member of the rank and file. *Id.* at 577. Hence, § 411 created in Local 400 no rights on which it could sue.

We find persuasive this conclusion, the analogy on which it is based, and the construction of § 411 from which it was developed. We do not see how extending to component units within a labor organization the rights of members secured by the LMRDA would advance union democracy or protect the right of individual members to participate in union deliberations and governance. We do see that such an extension would provide antagonistic factions within a union with yet another arena for combat. If the position of the *Commission House* or *Millwright* plaintiffs were to be adopted, then almost every re-organization within a union could be subject to a § 411 challenge by component locals. It is not clear how the cause of democracy would be advanced by court scrutiny, under due process standards, of such re-organizations by duly elected officials or duly constituted bodies. Nor is it clear why a statute enacted to protect the rank and file from dues exactions to which they have not consented should be construed to allow suits between union entities over the control of those dues. If an individual member is aggrieved by anything resulting from a reorganization, there are other, and better, means for asserting those grievances. Courts will scrutinize such measures for violations of the statutory rights of members, *see, e.g., Millwright Local No. 1079*, 878 F.2d at 963–66, in an appropriate action by those members, which may be a class action with the elected leadership of a union sub-unit as the titular plaintiffs. *See, e.g., Sertic v. Cuyahoga, Lake, Geauga, and Ashtabula Counties Carpenters District Council*, 423 F.2d 515 (6th Cir. 1970).

In reaching these conclusions, we acknowledge that two district courts in other circuits have afforded local unions standing to sue for violations of § 411. *See Local No. 1 (ACA), Broadcast Employees v. Internat'l Brotherhood of Teamsters*, 419 F.Supp. 263 (E.D.Pa.1976) and *Nelson v. Internat'l Ass'n of Bridge, Structural and Ornamental Iron Workers*, 680 F.Supp. 16 (D.D.C.1988). These cases have relied on the wording of §§ 412 and 402(d). The former, as we have said above, confers upon persons whose rights have been infringed under the pertinent subchapter, which includes § 411, the right to sue. The latter defines persons to include "labor organizations," as well as individuals, partnerships, corporations, etc. Since § 412 confers standing to sue on persons, the *Nelson* and *Local No. 1* courts have concluded that the definition of "persons" in § 402(d) confers standing on labor organizations as well as rank and file members.

■ We do not accept this reasoning. Section 402(*o*) defines "member" simply as "any person who has fulfilled the requirements for membership," while § 411 confers rights on members, not persons or labor organizations. As we understand § 412, when it confers standing to sue, it does so upon persons whose rights have been secured under § 411 and other pertinent sections of the subchapter. We conclude that only the rights of rank and file members are secured under § 411, not those of local unions or other union components. Therefore, § 412 confers standing to sue under § 411 only on persons who are members of unions and who enjoy the primary rights of rank and file membership, and not on the plaintiffs here or other union sub-units.

B

■ We now turn to Local 267's second claim, that the redirection of dues violated the terms of the assignment cards required by § 186 before an employer may pay checkoff dues to any union organization. In evaluating this claim, we must first place § 186 within the scheme of union dues collection.

The constitution of the international union provides that local unions and district councils may assess dues and set up a checkoff system to collect them. The collective bargaining agreement between the SCODC and employers provides for such a system. This arrangement is common practice in industry. *See generally* 51 C.J.S. *Labor Relations* § 253 (1967). If a union member does not participate in the checkoff system, the member must pay dues and assessments personally. Hence, the obligations of union members to pay dues is not a duty owed to the employer, but arises out of the relationship among the members as a condition of union membership. The dues checkoff system is only a means employed by the union to collect dues from the employee. The employer's role as collection agent for the union is established in the collective bargaining agreement, which is the source of its obligation to collect dues and remit them to union authorities. Defendant Welfare Fund stands as the middle man between the employers and the union entities that receive the members' dues. It serves to spare employers the need to calculate and remit the proportion of each employee's dues going to union entities entitled to them.

Section 186(c)(4) prevents the abuse of this system. It is an exception to the broad prohibition of § 186 against payments by employees to unions or union officials. Section 186 as a whole is concerned not only with the dues checkoff system but with any financial transactions between employers and unions, which can be corrupting. *See Central States Southeast and Southwest Areas Pension Fund v. Kraftco, Inc.*, 799 F.2d 1098, 1110 (6th Cir. 1986). As a general matter, the statute forbids any payment from an employer to a union, 29 U.S.C. § 186(a) & (b), including the payment of checkoff dues. Subsection (c)(4), however, makes an exception to this general rule by permitting such payment, provided that each employee authorizes it by signing the statutory "assignment" form. Hence, the form, properly construed, is the employee's consent to the employer's role as agent for the union in

the collection of dues. It is not the source of the obligation of the employee to pay dues, nor of the right of the union to receive them. That is a matter of internal union policy. It is not the source of the employer's duty to collect the dues and pay them to the union. That source is the collective bargaining agreement. Hence, the assignment form is not a true common law assignment, since it creates no rights in any assignee. It is merely a procedural requirement imposed upon the checkoff system by a federal statute, which somewhat inartfully misnames the form an assignment.

Because § 186(c)(5) is an exception to § 186(a), before Local 267 may show any violation of the former, it must first show that the latter applies by showing that some illicit payment has been made by an employer to a union. *Kraftco*, 799 F.2d at 1111. It has failed to do so. The payments that it challenges are made by the Welfare Fund (which is not an employer) pursuant to a collective bargaining agreement whose validity Local 267 does not question in this action. Were such a challenge made, the proper defendants would be the district council and the employers, not those now before this court.

### III

#### A

The final matters to be considered involve the procedure used to dismiss this action. Local 267's first argument is that the district court acted improperly in initiating the dismissal proceedings *sua sponte*. The local contends that the court below failed to follow the procedures established by this court in *Tingler v. Marshall*, 716 F.2d 1109 (6th Cir.1983) for *sua sponte* dismissals.

▪ Dismissals by a district court on its own initiative are not favored. Therefore, in *Tingler* we exercised our supervisory power to hold that a district court faced with a complaint which it believes to be meritless must: (1) allow service of the complaint upon the defendant; (2) notify all parties of its intent to dismiss the com-

plaint; (3) give the plaintiff a chance either to amend its complaint or respond to the reasons stated by the district court in its notice of intended *sua sponte* dismissal; (4) give the defendant a chance to respond or file an answer or motion; and 5) if the claim is dismissed, state the reasons for the dismissal. *Id.* at 1112.

■ Local 267 contends that it was confused by the court's order to show cause, not knowing whether to treat it as the initiation of dismissal, or summary judgment proceedings. It contends further that the court did not state the reasons for the proposed dismissal, thereby preventing it from answering the show-cause order effectively or amending its complaint.

It is difficult to credit these claims of prejudice. Local 267 made a very effective response to the court's *sua sponte* motion to dismiss by filing a memorandum in opposition. The court fully considered appellant's position. On appeal, the local re-argued the same issues in the same way, thereby giving rise to a very strong inference that the legal position taken in the memorandum filed with the trial court reflected the local's mature position. In addition, the local does not indicate what additional measures it might have taken to resist a motion for summary judgment that it did not take to oppose dismissal. We conclude therefore that the court's proceedings adhered to the *Tingler* standards and resulted in no prejudice to Local 267.

**B**

Local 267 next argues that the court acted improperly in considering the Noggle affidavit, a matter outside the pleadings, when it dismissed the case. Again, the local claims surprise that prevented it from preparing to resist what had effectively become a motion for summary judgment.

■ When a court considers dismissing an action for the legal insufficiency of the claim, and matters outside the pleadings are presented to the court and not excluded by it, the proceeding must be considered one for summary judgment. Fed.R.Civ.P. 12(b)(6). Where one party is

likely to be surprised by the change of proceedings, notice is required. *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 393 (6th Cir.1975).

■ Local 267 is correct in pointing out that the court below continued to use the term dismissal rather than summary judgment in reference to the proceedings it had initiated, even after its consideration of the Noggle affidavit placed the proceedings under the heading of Rule 56, which governs summary judgments. This error in nomenclature does not affect our review of the case. As an appellate court, we are not bound to adhere to the label attached to the trial court's disposition of the case and may treat it as a summary judgment. 5 C. Wright & A. Miller, Federal Practice and Procedure § 1366 n. 67 (West 1986) (collecting cases). We shall treat the judgment below as one granting summary judgment.

■ To show that it was prejudiced by the trial court's summary judgment proceedings, Local 267 must show that it was prevented from conducting additional relevant discovery or filing supplemental material in opposition to summary judgment. *See Dayco*, 523 F.2d at 393. Although Local 267 claims it was denied such an opportunity, it does not show what preparations it could have made to defeat the summary judgment, had it been given time to do so. Without this showing, we must conclude that there was no prejudice.

**C**

Local 267's final argument is that the judgement below rested on disputed issues of material fact. This argument is without merit. The local faults the court for basing its judgment on facts contained in the Noggle affidavit, but it does not say which of those facts it would controvert. Its argument that factual issues remain for resolution at trial merely restates contested legal matters on which the court below ruled. One example will suffice to illustrate this point. The local argues that

> Section 45(c) [of the constitution of the international union] authorizes Local Unions to establish working dues and dues

check-offs payable to the Local Union by members working in its jurisdiction. Clearly, as a matter of the UBCJA Constitution, Local 267 had every right to create working dues to be paid to its members.

Thus, contrary to the Court's decision, Section 45(c) in no way undermines plaintiff's claim.

This argument is simply a way of stating that Local 267 was entitled to the dues paid by its membership. The dispute thereby raised is legal, not factual.

We conclude, therefore, that although the district court could have been more exact in its terminology and more punctilious in transforming its motion to dismiss into one for summary judgment, Local 267 was not prejudiced by any errors in the proceedings below.

### IV

For the foregoing reasons the judgment below is AFFIRMED.