**MILLWRIGHT LOCAL # 1079,**
Plaintiff–Appellant,

v.

**UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, Defendant–Appellee.**

No. 88–3812.

United States Court of Appeals,
Sixth Circuit.

Argued May 19, 1989.

Decided July 10, 1989.

Rehearing Denied Aug. 8, 1989.

G. Daniel Spahn (argued), Freifield, Bruzzese, Wehr, Moreland, Straus & Spahn, Steubenville, Ohio, for plaintiff-appellant.

Frederick Cloppert (argued), Columbus, Ohio, for defendant-appellee.

Before MARTIN and BOGGS, Circuit Judges, and CONTIE, Senior Circuit Judge.

CONTIE, Senior Circuit Judge.

Plaintiff, Millwright Local # 1079 (Local 1079) appeals from the judgment of the district court dismissing this action brought under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (LMRA),[1] and section 101 of the Labor–Management Reporting and Disclosure Act, 29 U.S.C. § 411 (LMRDA),[2] seeking injunctive relief and money damages from defendants United Brotherhood of Carpenters and Joiners of America (UBCJA) and its General President Sigurd Lucassen. For the following reasons, we affirm the judgment of the district court.

## I.

This case involves the attempted reorganization of local labor organizations by the UBCJA.[3] The UBCJA is an international labor organization comprised of district councils, state councils, and local unions. Local 1079 is a subordinate labor organization within the structure of the UBCJA. Local 1079 is located in Steubenville, Ohio and has jurisdiction over five counties in Ohio and four in West Virginia. Local 1079 has approximately eighty-six members.

The UBCJA decided to reorganize its locals in the state of Ohio. The General Constitution of the UBCJA (the constitution) gives the UBCJA and the General President the following relevant authority:

The United Brotherhood is empowered, upon agreement of the Local Unions and Councils directly affected, or in the discretion of the General President subject to appeal to the General Executive Board, where the General President finds that it is in the best interests of the United Brotherhood and its members, locally or at large, to establish or dissolve any Local Union or Council, to merge or consolidate Local Unions or Councils, to establish or alter the trade or geographical jurisdiction of any Local Union or Council, to form Councils and to permit, prohibit or require the affiliation with or disaffiliation from any Council by any Local Union, including the right to establish state-wide, province-wide and regional Local Unions or Councils having jurisdiction over specified branches or subdivisions of the trade. The vested rights of the members shall be preserved and where action as herein described is taken the General President and General Executive Board shall preserve the membership rights of the members of affected Local Unions, including their right to attend and participate in meetings, to vote, to nominate candidates and to be nominated and run for office or business representative.

Constitution § 6A.

Under the reorganization plan, the five Ohio counties under Local 1079's jurisdiction would be placed under the jurisdiction of the Northeast District Council located in Cleveland. Local 1079 and Cleveland Local 1929 would be merged with Local 1871, which would be located in Cleveland. Jurisdiction over the West Virginia counties would be transferred to a West Virginia millwright local in Parkersburg. Members of Local 1079 would be given the opportuni-

---

1. Section 301 reads as follows:
   (a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.
   29 U.S.C. § 185(a).

2. Section 101 reads as follows:
   Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor orga-

nization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.

3. Local 1079 sought to enjoin the dissolving of its charter or its merger with other locals until it was accorded its rights guaranteed by the General Constitution of the UBCJA. On September 9, 1988, this court granted injunctive relief pending appeal and enjoined the removal of the charter prior to a hearing on the merits. Accordingly, Local 1079 has not been dissolved or merged as of this date.

ty to join either Local 1871 or the Parkersburg local. Members who joined the Cleveland local would still be able to work in West Virginia by obtaining a "Working Permit". The district court found, however, that members working in another local on a permit may encounter resentment from members of the local.

Local 1079 appealed the decision of the General President to reorganize to the General Executive Board. The General Executive Board dismissed the appeal. Local 1079, sought to appeal the Executive Board's decision to the General Convention of the UBCJA, which was not scheduled to convene until 1991. The appeal was denied on May 4, 1988 in a letter from the General President. The letter relied on section 57G of the constitution which reads in relevant part as follows: "[D]ecisions of the General Executive Board in all cases involving geographical jurisdiction, mergers, consolidations, and formation of Councils shall be final."

On May 5, 1985, appellant filed a complaint and a motion for a preliminary injunction in the Jefferson County Court of Common Pleas. The case was removed to district court on May 13, 1988. On June 17, 1988, appellant filed an amended complaint alleging a violation of section 301 of the LMRA [4] and alleging a violation of section 101 of the LMRDA. On July 28, 1988 the district court rendered judgment for appellee. This timely appeal followed.

Appellant raises the following arguments: (a) the UBCJA's interpretation of the constitution is unfair and unreasonable since by its actions the UBCJA denied Local 1079's members their right to vote, attend meetings and hold office; (b) the actions of the UBCJA violated section 101 by denying appellant's members' right to vote; (c) the district court erred in finding that appellant had no right to appeal to the General Convention. Appellee counters these arguments and argues further that Local 1079 could not bring a LMRDA action.

## II.

In deciding to merge Local 1079 with the Cleveland local, the UBCJA determined that the merger was authorized by section 6A of the constitution and that the merger did not infringe on any of the rights set forth in that section.

The standard by which this court reviews a union's interpretation of its constitution is well settled: "Courts are reluctant to substitute their judgment for that of union officials in the interpretation of the union's constitution, and will interfere only where the official's interpretation is not fair or reasonable." *Vestal v. Hoffa*, 451 F.2d 706, 709 (6th Cir.1971), *cert. denied*, 406 U.S. 934, 92 S.Ct. 1768, 32 L.Ed.2d 135 (1972). *See also Motion Picture & Videotape Editors Guild, Local 776 v. Local 695*, 800 F.2d 973, 975 (9th Cir.1986) (absent bad faith or special circumstances union's interpretation of its constitution should not be disturbed by the court), *cert. denied*, 483 U.S. 1022, 107 S.Ct. 3267, 97 L.Ed.2d 765 (1987); *Newell v. International B'hood of Elec. Workers*, 789 F.2d 1186, 1189 (5th Cir.1986) ("we will not invalidate the International's interpretation of its own constitution unless it is 'patently unreasonable' ").

Appellant argues that the UBCJA's interpretation of section 6A of the constitution is unfair and unreasonable for the following reasons: the decision was an effective denial of their right to vote, the decision affected their right to vote and hold office by creating a waiting period to vote and hold office, the decision affected their members' job mobility, and the decision affected their rights under existing collective bargaining agreements and the health and welfare plan.

## A.

■ The major premise of appellant's argument is that the UBCJA's decision de-

---

**4.** Local 1079 alleged that the UBCJA breached the contract with the local in that its actions were contrary to the constitution. A union constitution is a contract between labor organizations under section 301. *United Ass'n of Journeymen & Apprentices of the Plumbing & Pipefitting Indus. v. Local 334*, 452 U.S. 615, 619–20, 101 S.Ct. 2546, 2549–50, 69 L.Ed.2d 280 (1980).

nied its members their right to vote which is protected by section 6A.[5] The basis of this argument is that Local 1079 members will effectively be denied the right to vote because they will have to travel to Cleveland (a distance of 150 miles) to exercise the right. Appellant asserts that because of the distance its members will have to travel, they will not attend meetings at which collective bargaining agreements and the health and welfare plan could be modified.[6]

Appellant relies heavily on *McGinnis v. Local Union 710, International Brotherhood of Teamsters*, 774 F.2d 196 (7th Cir. 1985), *cert. denied*, 475 U.S. 1121, 106 S.Ct. 1638, 90 L.Ed.2d 184 (1986). In *McGinnis*, members of a Chicago Teamsters' local challenged the local's requirement that members personally attend meetings in order to vote on amendments to the bylaws. Eighteen percent of the local lived more than 150 miles from Chicago. The plaintiffs alleged that the requirement violated the equal voting privileges of section 101 and sought an order requiring the International to provide its remotely situated members with regional meetings or mail ballots. The court held that the in-person voting requirement placed a "very substantial burden" on the right to vote of a significant percentage of Local 710's members, *id.* at 201, and that the requirement is "an unreasonable denial of the equal voting rights of Local 710 members and constitutes a violation of Title I." *Id.* at 203.

Appellant argues that because its members will have to travel 150 miles to Cleveland, their voting rights will be burdened, and, therefore, the appellee's determination that the reorganization does not violate section 6A's provision protecting voting rights is not fair and reasonable.

Appellant's situation is distinguishable from the situation faced by the appellants in *McGinnis*. In *McGinnis*, the local had imposed an in-person voting requirement on its members and refused to authorize regional meetings or mail-in ballots. It is clear from *McGinnis*, that if, in that case, the International Union had provided regional meetings or mail-in ballots, there would not have been a section 101 violation. In the instant case, the district court made the following finding regarding regional meetings and mail-in ballots:

> In several other districts, meeting locations are rotated among the district's offices. Mail-in ballots are also used in some districts to facilitate voting by members who do not live near a district office. Board Member Hanahan has directed the Northeast Ohio Council to adopt one or both of these methods in order to accommodate all members.

Appellant argues that Hanahan did not direct that these methods be adopted.

"[F]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Fed.R.Civ.P. 52(a). In *Anderson v. City of Bessemer City*, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985), the Court, while acknowledging that the meaning of the phrase clearly erroneous is not immediately apparent, recognized that

> 'a finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently. The reviewing court oversteps the bounds of its duty under Rule 52 if it undertakes to

---

5. This right is also protected by section 101 of the LMRDA. Accordingly, appellant's LMRDA claim rests on the same premise as its LMRA claim.

6. The argument concerning the change in collective bargaining agreements and the health and welfare plan is based on the argument that by merging with Local 1871, Local 1079 members would effectively lose their right to vote and, therefore, these agreements could be changed without their input. Because we are not persuaded by their right to vote argument these dependent arguments are equally unpersuasive.

duplicate the role of the lower court.' In applying the clearly erroneous standard to the findings of a district court sitting without a jury, appellate courts must constantly have in mind that their function is not to decide factual issues *de novo*. If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.

*Id.* at 573–74, 105 S.Ct. at 1511–12 (citations omitted).

While he did not use the word "direct" in his testimony, Hanahan did give the following testimony:

Q. Now, there's been some discussion about mail-out ballots. Since restructuring in Ohio, has the mail-out ballot been used in any election?

A. Right today as we are sitting in this room in Columbus, Ohio, in this district council, the millwright local here applied for permission to use the mail-out ballot and was given in writing that permission. And it is typical in any large district council; Kentucky for example.

Q. The concept of moving meetings from one site to another within the local, is that something that will happen in this district?

A. Yes.

Q. Is the general president in favor of that type of—that type of movement?

A. We are not particularly—I don't—I can't speculate for the general president in his favor or disfavor. I can say that this general executive board member has instructed other district councils with a similar and like situation to have multiple places for their meetings, one time on one end of a district and other meeting in another.

And by the way, I have never had anyone decline it or deny it.

Appellant argues that the district court's finding concerning mail-in ballots and rotation of meetings is erroneous because the local would have to apply for permission to use these methods and that the by-laws would have to be changed to allow for these methods. Even given appellant's representations that the bylaws may have to be changed and they may have to apply for permission to use these alternative methods, we believe that based on Hanahan's testimony concerning the rotation of meetings, and the evidence that mail-in ballots have been used in other districts, the district court's finding is not clearly erroneous.

Accordingly, we conclude the UBCJA's interpretation of section 6A was fair and reasonable and that appellant's allegations concerning their right to vote are speculative and not in line with the evidence.

## B.

■ Appellant also argues that its members' rights are further impaired by section 42M of the constitution which reads in part as follows:

No member of a Local Union shall be eligible to vote for Officers, Business Representatives, assistant Business Representatives or Delegates or to vote on wages and working conditions unless such member has been at least 12 consecutive months a member of the Local Union and is in good standing in the Local Union at the time of voting, except where the Local Union has not been in existence the time here required....

Appellant asserts that this provision will cause its members to wait a year until they can vote.

The district court made the following ruling on this issue:

The evidence was conflicting as to whether members of Local # 1079 would have to wait one year before being eligible to hold office under Section 31(E) of the union constitution. Witnesses for the plaintiff testified that members of the local would be subject to the limitation. Board member Hanahan, however, testified that, in his opinion, the one-year limitation does not apply when one local

is merged with another. In any event, there is no evidence that the reorganization was undertaken with the purpose of barring members of Local #1079 from holding office for a year.

The conflict in the evidence referred to by the court was the testimony of Charles Haggerty that, in his view, the constitution would prohibit voting for one year, and the testimony of Hanahan that members transferring to Parkersburg would absolutely not have to wait a year to vote or hold office.

Appellant argues that the district court erred in looking at the purpose behind the reorganization rather than looking to see if, given appellant's allegations, the UBCJA's interpretation of the constitution is fair and reasonable. Although the district court did not recite the "fair and reasonable" standard in discussing this issue, its holding that the evidence did not show that the purpose of the reorganization was to deny Local 1079 members the right to vote or hold office for a year was equivalent to a determination that the UBCJA's action was fair and reasonable.

Given the fact that it is, at worst, uncertain whether appellant's members who transfer to Parkersburg will have to wait a year to vote and hold office, coupled with the lack of any evidence that the UBCJA intended or intends to bar Local 1079 members from voting or holding office for a year, we agree with the district court's conclusion that the waiting period issue does not make appellee's interpretation of the constitution allowing reorganization unfair or unreasonable.

## C.

■ Appellant also argues that its members' job mobility is adversely affected by the merger. Currently, members of Local 1079 can work in either West Virginia or Ohio. Under the merger, workers will continue to be able to work in both states, but they will be required to obtain a work permit. Also, the court found that workers working on a permit encounter resentment from members of the local. The court found, however, that the conditions concerning working on a permit would be the same even without the reorganization.

Appellant correctly points out that the district court misses the issue, which is that prior to the merger, Local 1079 members did not need a permit to work in this region. However, this "error" by the district court does not change the issue before us, which is whether the UBCJA's view of its constitution was fair and reasonable, given the fact that the merger may affect some of its members by forcing them to work on a permit, which is a less desirable status than being a member of the union local. We believe appellant's argument must fail. In any situation where jurisdictional lines are being redrawn, local unions will encounter the problems cited by appellant. If these problems were held to make the international union's actions unfair and unreasonable, international unions would be unable to restructure their locals. Since there are many valid reasons for restructuring local jurisdictions which would benefit the union and the locals,—a change in population, a change in the job market, and a change in local or state laws are a few that come to mind—we do not believe that the fact that a shifting of jurisdictional lines may incidentally affect the the attractiveness of working conditions for some members of the local makes the decision unfair and unreasonable.

Based on the foregoing, we agree with the district court's determination that the UBCJA's interpretation of its constitution to allow the merger of Local 1079 is fair and reasonable and, therefore, appellee did not violate section 301. *Cf. Local Union 657 of the UBCJA v. Sidell,* 552 F.2d 1250, 1256–57 (7th Cir.), *cert. denied,* 434 U.S. 862, 98 S.Ct. 190, 54 L.Ed.2d 135 (1977) (interpreting same constitution and finding that decision to require local to affiliate with a district council was not "patently unreasonable" and did not violate section 301).

## III.

■ Appellant argues that the district court erred in holding that the UBCJA's decision that appellant had no right to ap-

peal to the General Convention was not patently unreasonable. Section 57G of the constitution reads as follows: "[D]ecisions of the General Executive Board in all cases involving geographical jurisdiction, mergers, consolidations, and formation of Councils shall be final."

Appellant argues that section 57G does not apply because the actions of the UBCJA are a constructive expulsion or a suspension of Local 1079, and that under section 10H they have the right to appeal. Section 10H deals with actions that are generally contrary to the welfare of the UBCJA and reads as follows: "The General Executive Board is empowered to take such action as is necessary and proper for the welfare of the [UBCJA] subject, however, to the right of appeal to the next General Convention." Appellant also relies on its theory that its members would be denied the right to vote to support this argument.

Appellee argues that appellant's argument is without merit because Local 1079 has not shown that any member of Local 1079 was being expelled from the UBCJA. We agree.

Accordingly, we agree that the appellee's decision denying an appeal to the General Convention is fair and reasonable.

### IV.

Finally, appellant argues that the appellee's actions violated the rights set forth in Subchapter II of the LMRDA, 29 U.S.C. § 411. Section 102 of the LMRDA sets forth a cause of action for infringement of the rights set forth in section 101. Section 102 reads in relevant part as follows: "Any person whose rights secured by the provisions of this subchapter have been infringed by any violation of this subchapter may bring a civil action...." 29 U.S.C. § 412. The district court dismissed this claim holding that the claim must fail because "Plain-

tiff has not alleged any discrimination against classes of members." Appellant once again argues that the merger was an effective denial of its members' right to vote and, therefore, it infringed upon its section 101 rights. Appellee argues alternatively that Local 1079 cannot bring an action because it is not a member under the LMRA[7] and even if it could bring such an action, it did not set forth a valid section 101 claim in this case.

District courts which have addressed the question of a local union's right to bring an action under the LMRDA have been divided. Appellant relies on *Local #1 (ACA), Broadcast Employees v. International Brotherhood of Teamsters*, 419 F.Supp. 263 (E.D.Pa.1976), where the district court, relying on the LMRDA's definitional sections held that a local was a "member" under the LMRDA.

> The second question, then, was whether Local 1 itself is a 'member' of the IBT under LMRDA. (There can be no doubt that the individual plaintiffs are members.) As recounted above, the statute defines a 'member' as a 'person,' and a 'person' includes a local 'labor organization.' 29 U.S.C. §§ 402(o), (d), (i) (1970). Within this framework the IBT cannot successfully maintain the proposition that Local 1 is not a member of the IBT or that it has not 'fulfilled the requirements for membership' in the IBT....

*Id.* at 272.

Appellee relies on *Commission House Drivers v. Teamsters Joint Council 41*, 595 F.Supp. 574 (N.D.Ohio 1984), where the district court relying on *Finnegan v. Leu*, 456 U.S. 431, 102 S.Ct. 1867, 72 L.Ed.2d 239 (1982) and this court's decision in *Cehaich v. International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America*, 710 F.2d 234 (6th Cir.1983) and the legislative history behind the LMRDA held that a local union is not a "member" under the LMRDA.[8]

---

**7.** The district court did not address the issue of Local 1079's right to sue under the LMRDA. Rather, the district court ruled in appellee's favor on the merits.

**8.** Appellee also relies on the Supreme Court's decision in *Finnegan* and this court's decision in *Cehaich* to support its argument that Local 1079's failure to amend its complaint to add a member of the local as a plaintiff is fatal to its action since it is not a member of a labor

This Court believes that *Finnegan* and *Cehaich* control this case and oblige it to hold that Local 400 is not a 'member of a labor organization' within the meaning of § 411(a)(5). This holding accords with Congress's intent in passing LMRDA; the statute was only intended to protect 'rank and file union members.' *Finnegan*, 456 U.S. at 437, 102 S.Ct. at 1871. A union local, just like a union officer, is a higher component of the union's organizational structure, not a member of the rank and file. Given this Court's holding that Local 400 is not a 'member of a labor organization' under § 411(a)(5), this Court also holds that Local 400 is not entitled to the procedural safeguards of LMRDA.

*Commission House Drivers*, 595 F.Supp. at 577.

This issue was recently focused on by yet another district court in *Nelson v. International Association of Bridge, Structural and Ornamental Iron Workers*, 680 F.Supp. 16 (D.D.C.1988) where the court, while noting a split in authority, followed the "definitional" approach of *Broadcast Employees*, and held that a local is a member under the LMRDA.

> Although there is contradicting authority concerning a local's standing under the LMRDA, an analysis of the definitions in section 3 reveals that a local is a member of the International as the term 'member' is used in section 101(a)(2). Authority to the contrary does not analyze the definitions and cites no authority for the proposition that locals do not have standing. Consequently, Local 505 may assert claims under section 101(a)(2).

*Id.* at 20–21.

Because we are unpersuaded by appellant's right to vote argument, and because we agree with the district court's determination that appellant did not set forth a

meritorious LMRDA claim, we need not decide the issue of whether Local 1079 could bring a LMRDA claim. Therefore, assuming arguendo, that Local 1079 could bring such an action, we agree with the district court's dismissal of the LMRDA claim.

### V.

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

organization under the LMRDA. In *Finnegan*, the Court held that the removal of a union's business agent was not violative of the LMRDA because the LMRDA applies to "members" of labor organizations and not employees of unions. 456 U.S. at 442, 102 S.Ct. at 1873. This court applied the *Finnegan* analysis in *Cehaich* and held that the dismissal of a union benefits

representative was not violative of the act because the removal affected his status as an employee of the union, not as a member of the union. 710 F.2d at 239–40. Appellant distinguishes these cases by noting that the instant case is not a termination of union employment case, which requires an inquiry into the status of the plaintiff.