Jerry TUCKER, Plaintiff–Appellant,

v.

Owen BIEBER, International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW, Defendants–Appellees.

No. 89–1721.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 9, 1990.

Decided April 13, 1990.

Barbara Harvey, Detroit, Mich., John F. Colwell, and Joseph A. Yablonski (argued), Yablonski, Both & Edelman, Washington, D.C., for plaintiff-appellant.

M. Jay Whitman (argued), United Auto Workers, Detroit, Mich., for defendants-appellees.

Before JONES and MILBURN, Circuit Judges, and BELL, District Judge.[*]

MILBURN, Circuit Judge.

Plaintiff-appellant Jerry Tucker was discharged from his appointed position on the staff of defendant-appellee United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW") on May 12, 1986, four days after he announced his candidacy for Director of UAW Region 5 and a seat on the union's International Executive Board. Defendant-appellee UAW President Owen Bieber ordered Tucker's discharge based upon the union's "ninety-day rule," which requires appointed staff personnel to announce their candidacies and take unpaid leaves of absence at least ninety days before scheduled union elections. Tucker appeals the summary judgment granted by the district court in favor of the defendants on the ground that his discharge did not violate the Labor Management Reporting and Disclosure Act, 29 U.S.C. §§ 401–531, or other federal labor law provisions. For the reasons that follow, we AFFIRM.

## I.

### A.

Tucker initiated this action by filing a complaint on September 30, 1986, seeking reinstatement, back pay and damages. His complaint alleged five separate grounds for recovery; *viz.*, Count I alleged violation of Title I of the LMRDA, Counts II and III alleged his termination violated the UAW Constitution and his contract rights as a union employee, and Counts IV and V asserted common law tort claims.

Shortly before Tucker filed this action, United States Secretary of Labor William Brock filed several actions in the district court challenging the validity of the UAW Region 5 election held in June 1986 and Tucker's termination. The secretary alleged that both the improprieties in the election and the ninety-day rule violated various sections of the LMRDA. Tucker intervened in the Secretary's actions, but maintained his private action against Bieber and the UAW separately. *See Brock v. International Union, UAW*, 682 F.Supp. 1415, 1420–21 (E.D.Mich.1988).

On March 30, 1988, the district court determined that the Region 5 election had violated the LMRDA and ordered a rerun

---

[*] Honorable Robert Holmes Bell, United States District Judge for the Western District of Michigan, sitting by designation.

election. *Brock,* 682 F.Supp. at 1428–33.[1] Although Tucker and the Secretary both urged the district court to declare the ninety-day rule invalid, it found that the rule was "a reasonable restriction on candidacy if ... the restriction is contained in the UAW's Constitution or bylaws." *Id. Brock,* 682 F.Supp. at 1426. The district court then dismissed the challenge to the rule as moot because of the relief it granted on other claims.[2]

Tucker and the defendants in this case filed cross-motions for summary judgment in February and March of 1987. In an opinion issued January 19, 1989, the district court denied Tucker's motion and entered summary judgment on Counts I, II and III in favor of the defendants. The district court then dismissed Counts IV and V—the common law tort claims—for lack of federal jurisdiction.

On January 26, 1989, Tucker moved the district court to alter and vacate the judgment based upon the United States Supreme Court decision in *Sheet Metal Workers' Int'l Ass'n v. Lynn,* 488 U.S. 347, 109 S.Ct. 639, 102 L.Ed.2d 700 (1989), which was issued one day before the district court entered summary judgment in favor of the defendants. On May 18, 1989, the district court denied Tucker's motion to alter or amend.

### B.

Tucker joined the UAW in 1960. In 1984, Region 5 Director Ken Worley appointed Tucker to the position of assistant regional director.[3] The position of assistant regional director is the senior political appointment within the UAW's staff system.

In 1985, some UAW members who were dissatisfied with their union's leadership organized a coalition known as "New Directions." In May 1986, members of the New Directions movement urged Tucker to challenge Worley for the Region 5 directorship at the UAW international convention, which was scheduled to be held in June 1986.[4]

Tucker announced his candidacy for the regional directorship on May 8, 1986, *less than one month before the convention.* Tucker asked Worley for a leave of absence, but his request was denied. Instead, on Bieber's order, Tucker was discharged from his staff position on May 13, 1986. The stated reason for Tucker's termination was his violation of the ninety-day rule. Tucker was one of four UAW staff members to challenge for regional directorships in the 1986 election. He was the only one of the four to violate the ninety-day rule, and he was the only one terminated from his appointed position.

Tucker's termination did not affect his eligibility to run for the regional directorship, but it deprived him of the credentials necessary to gain access to the convention floor. In the election, Worley defeated Tucker by a margin of less than one vote, 324.577 to 324.415.[5] Tucker challenged the election in a letter to Bieber on June 5, 1986. On June 6, 1986, the convention credentials committee considered Tucker's complaint, rejected it, and certified Worley's election victory.

Tucker then filed a complaint with the Secretary of Labor about the election. After an investigation, the Secretary initiated the actions against the UAW discussed

---

1. Tucker won the rerun election, which was held on September 2, 1988. He was defeated in his bid for reelection in June 1989.

2. On appeal, Tucker and the Secretary urged us to reverse the district court and declare the ninety-day rule invalid. We found the issues and appeal had become moot, vacated the judgment of the district court, and remanded the case with instructions to dismiss the complaints. *Brock v. International Union, UAW,* 889 F.2d 685 (6th Cir.1989).

3. Region 5 encompasses the southwestern United States.

4. The director of Region 5 is elected every three years at the international convention by the vote of delegates selected from UAW locals within the region. The director serves on the UAW's International Executive Board, the highest governing body of the union.

5. UAW delegates vote with fractional votes based upon the size of the local they represent.

above which led the district court to overturn the 1986 convention election. A rerun election was held in September 1988, and Tucker defeated Worley to become Region 5 director.

Like Tucker, Gary Brandt, an appointed UAW staff member in Region 2, challenged his regional director in the 1986 election. Unlike Tucker, Brandt complied with the ninety-day rule, but then withdrew from the race. The Region 2 director was re-elected, and Brandt was transferred from Cleveland to Detroit, pursuant to that portion of the ninety-day rule that requires unsuccessful challengers to accept a transfer after the election. Brandt challenged the rule on the grounds that (1) it impermissibly burdened challengers by requiring them to forego ninety days' wages before the election and accept a transfer if they lost, and (2) the rule was invalid because it was never formally incorporated into the UAW Constitution. Brandt challenged the rule administratively, and his appeal eventually reached the Public Review Board ("PRB"), an independent panel that decides disputes arising from the UAW's Constitution.

In a decision issued August 28, 1987, the PRB upheld the rule as a properly adopted, reasonable regulation of the UAW's appointed staff members. *Brandt v. UAW*, PRB Case No. 787 (August 28, 1987) ("*Brandt I*"). The PRB agreed to reconsider Brandt's appeal and allow Tucker to appear as an amicus. The PRB reaffirmed its prior decision, deciding that the rule was not invalid for failure to be incorporated into the union's constitution when the evidence showed it was a well-known, uniform union standard. *Brandt v. UAW*, PRB Case No. 787 II (April 22, 1988) ("*Brandt II*").

In this case, the district court found that the PRB's ruling on the ninety-day rule was fair and reasonable and adopted it. The district court also found that Title I did not give Tucker a legal entitlement to an appointed position on the union staff, and his termination did not affect his membership rights. The district court concluded that the ninety-day rule "provided a legit-imate basis for Tucker's discharge and was not a deliberate attempt to stifle dissent within the Union."

Turning to Tucker's other claims, the district court found that section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, does not confer jurisdiction upon federal courts over actions brought by individual union members for a union's alleged violations of its constitution. *See Trail v. International Bhd. of Teamsters*, 542 F.2d 961, 968 (6th Cir.1976). The district court chose to exercise pendent jurisdiction over Counts II and III, and found that the union did not breach its constitution or Tucker's employment rights.

The principal issues on appeal are whether the district court erred in deciding (1) that the ninety-day rule did not violate the LMRDA, and (2) that the UAW did not violate its constitution or the conditions of Tucker's employment in discharging him.

## II.

### A.

In this appeal of a district court's grant of summary judgment on the defendants' cross-motions for summary judgment, our role is identical to that of the district court. *Hand v. Central Transport, Inc.*, 779 F.2d 8, 10 (6th Cir.1985) (per curiam). Our review of the district court's decision in this case is de novo since only questions of law are involved in this appeal. *Pinney Dock and Transport Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1472 (6th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988).

In this appeal, Tucker also challenges the Public Review Board's decision upholding the ninety-day rule. We recently held that "[c]ourts are reluctant to substitute their judgment for that of union officials in the interpretation of the union's constitution, and will interfere only where the official's interpretation is not fair or reasonable." *Millwright Local No. 1079 v. United Bhd. of Carpenters and Joiners*, 878 F.2d 960, 962, (6th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 407, 107 L.Ed.2d 373 (1989) (quoting *Vestal v. Hoffa*, 451 F.2d 706, 709 (6th

Cir.1971), *cert. denied,* 406 U.S. 934, 92 S.Ct. 1768, 32 L.Ed.2d 135 (1972)).

### B.

"Title I of the LMRDA and specifically section 101, 29 U.S.C. § 411, is the 'Bill of Rights' for union members." *Knisley v. Teamsters Local 654,* 844 F.2d 387, 389 (6th Cir.1988) (per curiam). Title I protects rank and file union members who speak out against union leaders or who seek elective union offices. *United Steelworkers of America v. Sadlowski,* 457 U.S. 102, 109, 102 S.Ct. 2339, 2344, 72 L.Ed.2d 707 (1982). It guarantees every union member the rights of free speech and assembly and equal voting rights. Title I also provides for private enforcement actions to further the primary objective of the LMRDA; *viz.,* "ensuring that unions [are] democratically governed and responsive to the will of their memberships." *Sheet Metal Workers' Int'l Ass'n v. Lynn,* 488 U.S. 347, 109 S.Ct. 639, 643, 102 L.Ed.2d 700 (1989) (quoting *Finnegan v. Leu,* 456 U.S. 431, 436, 102 S.Ct. 1867, 1870, 72 L.Ed.2d 239 (1982)).

■ Title I protects those rights that are fundamental to union membership—"membership rights," as opposed to any "job rights" that might arise from a particular union member's employment on the union's appointed staff. Title I did not create "a system of job security or tenure for appointed union employees." *Finnegan,* 456 U.S. at 438, 102 S.Ct. at 1871. As we have explained:

> "Any union *member* is certainly entitled to disagree with the union's policy. *However, when persons chosen by the union leadership are appointed* to effectuate that policy, elected union officers are investing the appointee with the trust of the membership. When that trust is lost, not only will the appointee be subject to removal; but the elected official has placed his office in jeopardy also. *For that reason, the courts have been reluctant to interfere with the right of elected union officers to select their own administrators.*

*Cehaich v. International Union, UAW,* 710 F.2d 234, 239 (6th Cir.1983) (footnote omitted) (emphasis added).

In this type of Title I dispute, we look to *Finnegan* and *Sheet Metal Workers* for guidance. In *Finnegan,* a newly elected union president discharged the union's appointed business agents, who had been appointed by the preceding president and who had campaigned against the new president in the election. The Court acknowledged that their discharge had a chilling effect on their free speech rights. The Court held, however, that Title I rights are not absolute and do "not restrict the freedom of an elected union leader to choose a staff whose views are compatible with his own." *Finnegan,* 456 U.S. at 441, 102 S.Ct. at 1873 (footnote omitted). The Court also held that the agents "held a dual status as both employees and members of the [u]nion," *id.* at 437, 102 S.Ct. at 1871, and in the absence of any deliberate scheme to suppress speech, the discharge of appointed staff members affected only their job rights and not any membership rights that were protected by the LMRDA. *Id.* at 440–41, 102 S.Ct. at 1872–73; *see also Cehaich,* 710 F.2d at 238.

In *Sheet Metal Workers,* the union's national administration took control of a local and installed a trustee, who fired one of the local's elected business agents in retaliation for his opposition to the trustee's plan to increase dues. The Court held that the discharge of an elected official infringed upon the Title I free speech rights of *both* the business agent *and* the entire local membership, while also depriving the members of their voting rights by denying them the representative of their choice. *Sheet Metal Workers,* 109 S.Ct. at 644–45. This type of dictatorial conduct "is precisely what Congress sought to prevent when it passed the LMRDA." *Id.* at 645.

Tucker argues that his appeal is controlled, in his favor, by *Sheet Metal Workers,* not *Finnegan.* He argues that the rationale of *Sheet Metal Workers* applies equally to *candidates* for elective office because of the potential chilling effects of discharging appointees who decide to exer-

cise their right to run for office. Essentially, he characterizes candidates as nearly elected officials, and then argues that for Title I purposes, being nearly elected is the same as being elected. We are not persuaded by Tucker's arguments.

It is undisputed in this case that four appointees were candidates in the 1986 UAW elections. Tucker was the only one of the four who ignored the ninety-day rule, and was the only one of the four to be terminated. Tucker's termination, however, did not prevent him from running for office. Once he lost his staff job, he lacked the credentials necessary to gain access to the convention floor. However, there is no evidence that he endured any more campaign hardships than any other candidate from the rank and file, nor is there any evidence that Tucker was inhibited from speaking or that the membership was hindered in voting for him. Indeed, he nearly defeated Worley in the 1986 election. At most, Tucker endured an indirect infringement no more significant than what the discharged appointees experienced in *Finnegan.* This case also lacks the egregious facts present in *Sheet Metal Workers.* Thus, absent some special circumstances, it does not appear that Tucker's discharge infringed upon his Title I rights in any significant manner.

Tucker claims that the special circumstances of his case are that he was a candidate in a campaign. As a candidate, he argues, he required the ability to exercise his free speech rights most vigorously, and speech must flow at its freest if the membership is to benefit from a campaign. Thus, he concludes that once he became a candidate, the free speech and voting rights concerns of *Sheet Metal Workers* triggered an extension of Title I to protect his right to keep his appointed staff position. We disagree.

First, we cannot ignore that this case involves "the ability of an elected union president to select his own administrators ..." *Finnegan,* 456 U.S. at 441, 102 S.Ct. at 1873. This interest was absent in *Sheet Metal Workers.* Where it is present, we must consider it to determine how it balances against the asserted Title I rights. *Finnegan,* 456 U.S. at 440–41, 102 S.Ct. at 1872–73.

Second, the Court emphasized that the distinguishing characteristic in *Sheet Metal Workers* was the fact that the discharged business agent had been elected to his office. 109 S.Ct. at 644–45. His dismissal not only chilled his Title I rights, but also had the immediate effect of silencing the entire local membership's speech, suspending its voting rights, and depriving the local of leadership at a crucial time in its existence. *Id.* at 645. In contrast, the voting and speech concerns that Tucker raises focus on himself, are speculative at best, and appear to be completely baseless when it is remembered that despite Tucker's termination, a vigorous campaign still occurred.

In *Finnegan,* the Court recognized that appointees may hold the dual status of union employee and union member. 456 U.S. at 437, 102 S.Ct. at 1871. Tucker urges us to recognize a third category—candidate—and stretch Title I to protect his "right" to keep his appointed job while he is a candidate, in complete disregard of the elected union administration's freedom to select and maintain a staff that will carry out its policies. We find no merit in this contention. Clearly, Tucker's discharge cost him his appointed staff position. However, as we explained in *Cehaich,* that price alone does not amount to a Title I violation as an appointee's discharge affects only his role as an appointee, not his role as a union member. 710 F.2d at 238–39. Title I ensures that every union member may challenge the union leadership; it does not guarantee that those who challenge it will be appointed to or remain on the elected leadership's staff.

Tucker argues that after *Sheet Metal Workers,* the determination of whether his discharge violates Title I must be made in light of the LMRDA's objective of ensuring that unions are governed democratically. Were this the sole criteria, Tucker's claim would still fail, for despite his discharge the union remained democratically governed. Though Tucker seems incapable of

remembering it, he nearly defeated Worley in the election, and another challenging appointee won his race. In sum, there is no evidence in this case that Tucker's discharge suspended the democratic governance of the UAW.[6]

## C.

The union's stated reason for discharging Tucker was his violation of the ninety-day rule. Tucker attacks the rule as being invalid because it was never incorporated into the UAW Constitution and it impermissibly burdens challengers. The district court reviewed the PRB's recent decision approving the rule, found that decision to be fair and reasonable and adopted it. We agree.

We note at the outset that federal labor regulations permit unions to prohibit appointed employees from running for office. 29 C.F.R. § 452.48 (1989). We also note that the UAW adopted the ninety-day rule to promote democratic competition within the union's structure by assuring appointed staff members that they can retain their appointed staff positions if they fail to be elected to office. *See Robertson v. International Union, UAW*, PRB Case No. 225 (1971). While the rule was never adopted in a formal, recorded meeting of the UAW International Executive Board, the PRB decided that because of the manner in which the union is governed, and because of the broad dissemination of the ninety-day rule, it was the type of recognized, written uniform union policy the board had called for in *Robertson*.

On appeal, Tucker argues that in *Robertson* the PRB *required* the UAW to incorporate the ninety-day rule in its constitution to protect appointees' candidacy rights and because it limits members' candidacy rights. We disagree.

First, as this case makes clear, the ninety-day rule does not affect the right of any union member, staff appointee or rank-and-file member, to run for office. Tucker ignored the rule, ran for office and nearly won.

Second, like the PRB, we do not interpret *Robertson* to require the UAW to incorporate the ninety-day rule into its constitution. The PRB's concern in *Robertson* was that the UAW had no written policy and gave appointed employees no indication of what to expect if they ran for office. The PRB decided in *Brandt I* and *Brandt II* that the ninety-day rule, as applied to Tucker, satisfied the requirements of the *Robertson* decision, and we find the board's reading of its prior decision to be fair and reasonable. Tucker also attacks the rule on the ground that it impermissibly burdens challengers by requiring them to take a ninety-day leave of absence, forego between $10,000 and $15,000 in lost wages, and if they lose, accept reassignment to another city. He argues that the rule effectively muzzles members' dissent by making it too expensive for them to run for office.

In *Brandt II*, the PRB found these arguments fouled the issue by confusing membership rights and job rights.

> The issue, however, is not relative advantage and disadvantage. The [UAW] Constitution does not require, in terms of the currently popular idiom, a level playing field. We have long recognized the advantages which incumbency provides, and have consistently ruled that such advantages do not make the electoral process *per se* unfair.

*Brandt II*, at J.A. 267 (footnote omitted).

The PRB found that Brandt sought to enforce "the right to continue in his post during the campaign and to be free from transfer if his campaign is unsuccessful." *Id.* The board further found that this "right" was not a membership right, and the UAW's failure to protect a nonexistent right was not an invalid action, as "[n]oth-

---

6. We also point out that after *Sheet Metal Workers*, as before, the basic objective of the LMRDA is not only to ensure that unions are democratically governed, but also to ensure that unions are "responsive to the will of the union membership as expressed in open, periodic elections." *Sheet Metal Workers*, 109 S.Ct. at 644 (quoting *Finnegan*, 456 U.S. at 441, 102 S.Ct. at 1873). The basic objective would be thwarted if the elected union leadership were forced to retain appointed members that were "disloyal." *Id.* 109 S.Ct. at 644.

ing in the Constitution specifically guarantees unchanged job rights to an International representative during his electoral challenge to an incumbent." *Id.* at 267–68.

Tucker argues on appeal that *Brandt II* dealt only with Brandt's objection to a post-election transfer and is not applicable to this case. We disagree, as Brandt objected to being forced to take an unpaid leave of absence and accept a transfer to another city. Tucker's argument is misplaced given that he intervened in *Brandt II* as an amicus because it hinged on issues identical to those in this case. We find the PRB's analysis of the ninety-day rule was neither unfair nor unreasonable, and, consequently, we will not substitute our judgment of union policy over the board's.

### D.

In Counts II and III, Tucker alleges that the UAW breached its constitution and his employment contract when it discharged him. He argues that the constitution incorporates the right to retain an appointed staff job while running for office, and that he did not engage in any conduct that would justify discharge under the terms of his employment agreement.

The district court first held that it lacked jurisdiction over Tucker's "constitutional" claim because the LMRDA does not confer jurisdiction upon federal courts to adjudicate union members' actions to enforce union constitutions. *See Trail v. International Bhd. of Teamsters*, 542 F.2d 961, 968 (6th Cir.1976). The district court then chose to exercise pendent jurisdiction over both claims and dismissed them after concluding that the union had not engaged in any wrongful conduct.

■ While courts have split on the issue, *Trail* remains the law in this circuit, and we hold that the district court was correct in deciding that section 301 of the LMRA does not confer jurisdiction for an individual union member's action to enforce a union constitution. We further hold that the district court did not abuse its discretion in exercising pendent jurisdiction over Counts II and III, and we agree with the district court that Tucker has failed to

show that the union breached its constitution or Tucker's employment contract.

■ Tucker argues that because the UAW Constitution guarantees every union member the right to run for office, then "by its terms," the constitution guarantees that Tucker could continue to work for Worley after he announced he was challenging Worley for his job. Tucker asserts this "right" must be incorporated into the constitution. The UAW Constitution makes no mention of special candidacy rights, either for rank-and-file members or appointees. Moreover, Tucker's asserted right conflicts with the freedom of the elected union leaders to maintain a loyal staff that will faithfully execute their policies. We hold that Tucker's claim of a constitutional violation is meritless.

■ Tucker argues that as an appointed employee, he could be discharged only for (1) dereliction of duty, (2) dishonesty, or (3) union need to conserve finances. He insists that exercising the right to run for office cannot be construed to be a "dereliction of duty." In stating this proposition, however, Tucker conveniently ignores the fact that he exercised his right to run for office in direct violation of established union policy. We agree with the PRB and the district court that Tucker's conduct was a legitimate basis for discharge.

After rejecting Tucker's Title I claim in Count I, and dismissing Counts II and III, the district court dismissed the two remaining pendent claims for lack of jurisdiction. In light of our disposition of the preceding portions of Tucker's appeal, we find the district court did not abuse its discretion in dismissing Counts IV and V.

### III.

We hold that Tucker's asserted "right" to retain his appointed position on the union staff while he challenged the union leadership for office does not exist under Title I of the LMRDA. We further hold that the UAW did not breach its constitution or conditions of Tucker's employment in discharging him for violating the ninety-

day rule. For the foregoing reasons, the judgment of the district court is AFFIRMED.