UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, DRESDEN LOCAL NO. 267; Daniel Mulford; and David Mathew, Plaintiffs–Appellants,

v.

UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, SOUTH CENTRAL OHIO DISTRICT COUNCIL; Jack Noggle; and Frank Casto (92–3646), Defendants–Appellees,

United Brotherhood of Carpenters and Joiners of America; and Sigurd Lucassen (92–3746), Defendants–Appellees.

Nos. 92–3646, 92–3746.

United States Court of Appeals, Sixth Circuit.

Argued March 16, 1993.

Decided April 27, 1993.*

---

* This decision was originally issued as an "unpublished decision" filed on April 27, 1993. On May 12, 1993, the court designated the opinion as one recommended for full-text publication.

Andrew S. Lipton (argued and briefed), Manley, Burke, Fischer & Lipton, Cincinnati, OH, for plaintiffs-appellants.

Frederick G. Cloppert, Jr. (argued and briefed), Cloppert, Portman, Sauter, Latan-

ick & Foley, Columbus, OH, for defendants-appellees.

Before: MILBURN and NELSON, Circuit Judges; and CONTIE, Senior Circuit Judge.

PER CURIAM.

The plaintiffs—Dresden Local 267 of the United Brotherhood of Carpenters and Joiners of America and two officials of that local union—appeal from a judgment for the defendants in a consolidated proceeding arising out of the involuntary dissolution of Local 267. The defendants are the Brotherhood itself, the Brotherhood's South Central Ohio District Council (consisting of Local 267 and six other locals), and three individuals holding office in the Brotherhood or the Council.

In the case docketed as No. C2–90–264 in the district court (Appeal No. 92–3646) the plaintiffs contend that the Brotherhood's constitution requires district council bylaws to be adopted by a direct vote of the membership of the affiliated local unions; no such vote was taken here, and the plaintiffs allege that Council actions pursuant to the questioned bylaws, including the election of defendant Casto as the Council's president and defendant Noggle as its secretary-treasurer and business manager, are void as a result. The plaintiffs also maintain that even if the bylaws of the Council were properly adopted, they impermissibly deprive Local 267 of its right to elect a business representative. Finally, the plaintiffs allege that working dues were imposed on Local 267 improperly. The action was brought under § 301 of the Taft-Hartley Act, 29 U.S.C. § 185, and the Labor Management Reporting and Disclosure Act [hereinafter LMRDA], 29 U.S.C. §§ 401 *et seq.*

In Case No. C2–91–023 (Appeal No. 92–3746) the same plaintiffs sued the Brotherhood and its general president, Sigurd Lucassen, to enjoin them from dissolving Local 267. The dissolution is claimed to be invalid because it did not comport with the Brotherhood's constitution and because it was not preceded by a fair hearing, as required by § 304 of LMRDA, 29 U.S.C. § 464.

We conclude that the procedure followed in adopting the Council's bylaws was a permissible one, and we shall affirm the judgment entered by the district court (Graham, J.) in favor of the defendants.

I

**Overview.** The Brotherhood is an international labor organization comprised of state councils, district councils, and local unions. Local 267 was chartered as a local union of the Brotherhood.

In January of 1988 the Brotherhood decided to reorganize its district councils and local unions in the state of Ohio. Its authority to effect such a reorganization was upheld in *Millwright Local No. 1079 v. United Brotherhood of Carpenters,* 878 F.2d 960 (6th Cir.), *cert. denied,* 493 U.S. 965, 110 S.Ct. 407, 107 L.Ed.2d 373 (1989). Various aspects of the reorganization have been challenged by Local 267 in other litigation. See *United Brotherhood of Carpenters, Dresden Local No. 267 v. Ohio Carpenters Health & Welfare Fund,* 926 F.2d 550 (6th Cir.1991).

Prior to the reorganization Local 267 was a member of the Capital District Council. That council was dissolved in the reorganization and a new council, the South Central Ohio District Council, was created. Local 267 and six other local unions became members of the new council.

On July 26, 1988, the Council adopted bylaws that were subsequently approved by the Brotherhood's First General Vice President. The action of the Council in adopting the bylaws was taken by a vote of delegates from the constituent local unions. Local 267, which objected to the reorganization, boycotted the proceedings relating to the creation of the new district council and instituted the litigation that is before us here. The plaintiffs have perfected timely appeals in both suits.

**The Council and Its Bylaws.** The reorganization of the Brotherhood's district councils and local unions in Ohio was preceded by considerable discussion between the Brotherhood and its existing subordinate bodies in that state. Accordingly, and because of the sweeping effects and controversial nature of similar changes that had already occurred in

Michigan, Indiana, and Kentucky, the Ohio locals and their members were well aware of what was about to happen.

Formal notice of the reorganization went to all Ohio local unions and district councils on January 25, 1988. The notice was in the form of a letter from defendant Lucassen, who was then the First General Vice President of the Brotherhood. Six days before Mr. Lucassen's letter went out there was an informational meeting in Columbus, Ohio, for the local unions that were to be grouped together in the proposed South Central Ohio District Council. Thomas Hanahan of the Brotherhood presided over the meeting, and officers of Local 267 and the other involved locals were in attendance. Mr. Hanahan explained both the structural changes that would occur as a result of the reorganization and other changes that would be embodied in the proposed bylaws for the new district council. The proposed bylaws included changes in a local's right to elect a business representative and in its right to vote on future collective bargaining agreements. Mr. Hanahan stressed the importance of the tasks facing the delegates to be elected to the new district council.

Mr. Lucassen's letter of January 25, 1988, simultaneously dissolved the old Capital District Council and created the new South Central Ohio District Council. Until July of 1988 the newly created council was governed by temporary delegates appointed by the Brotherhood. The temporary delegates were mostly holdover delegates from the old district council, but additional delegates were appointed to fill newly created positions. Local 267 was asked to submit a list of temporary delegates, but, according to the Brotherhood, it declined to do so. Plaintiff Daniel Mulford testified, however, that Local 267 gave the Brotherhood oral notice of the identity of the Local's on-going delegates, and none of them was seated.

At a meeting held on March 28, 1988, officers and temporary delegates to the new council were sworn in and temporary bylaws were approved pending the election of regular ("permanent") delegates by the local unions. After the temporary bylaws were adopted, Local 267 requested and received a copy of them. They were essentially the same as the bylaws later adopted by the elected regular delegates.

In April of 1988 the Council sent a notice to all affected local unions, including Local 267, instructing them to nominate and elect regular delegates to the Council in accordance with the Brotherhood's constitution. Local 267 was entitled to elect six delegates but refused to participate in the process.

On July 7, 1988, the members of the local unions were notified that there would be a vote on the Council's bylaws at a special meeting of the elected regular delegates to be held on July 26, 1988. Local 267 refused to send delegates to the special meeting. The local union delegates who did attend the special meeting approved the new bylaws by a vote of 24 to 8. In accordance with the union's constitution, the new bylaws were then submitted to the Brotherhood. The Brotherhood approved them with two modifications not relevant here.

**Voting Rights of Local 267.** Prior to the reorganization the bylaws of the Capital District Council gave Local 267 the right to elect its own business representative. The new bylaws eliminated that right and gave the secretary-treasurer of the Council the power to hire and fire all business representatives, subject to approval by the Council's executive committee.

The plaintiffs assert that any such bylaw would violate a provision found in section 6A of the Brotherhood's constitution. That provision reads as follows:

> "The *vested rights* of the members shall be preserved and where action as herein described is taken, the general president and the general executive board shall preserve the membership rights of the members of the affected local unions, including their right to attend and participate in meetings, to vote, to nominate candidates and to be nominated and run for office or business representative." (Emphasis added.)

The plaintiffs contend that the Local's right to elect its own business representative was a "vested right" that could not be eliminated. The district court concluded otherwise.

**Other Causes of Action and the Imposition of Working Dues.** After considering the evidence submitted by the parties, the district court ruled that the plaintiffs had not exhausted their internal union remedies with respect to the fifth through eleventh claims set forth in their amended complaint. These claims concerned the Council's imposition of various dues, taxes, fees, and assessments. The district court did address the merits of a claim regarding working dues, however, and held in favor of the Council defendants as to that claim.

**Dissolution of Local 267.** Local 267's resistance to the reorganization prompted the Brotherhood to send several warnings that the Local and its business representative, Mr. Mulford, were acting in violation of the Brotherhood's constitution. In the fall of 1990 General President Lucassen assigned Thomas Hanahan to meet with the membership of Local 267 to discuss the continuing problems. Mr. Hanahan notified Local 267's membership of a special meeting to be held in November of 1990. At the meeting Mr. Hanahan informed the members that the Local was acting contrary to the Brotherhood's constitution. Two principal violations were discussed: (1) Mr. Mulford was acting as a business representative without having been appointed by the Council, and (2) the Local had failed to pay a per capita tax to the Council. Some weeks then passed without any sign of change in Local 267's position.

On December 28, 1990, pursuant to sections 6D and 10H of the Brotherhood's constitution, the General President appointed a three-person committee, known as the Carter Committee, to conduct hearings on the actions and circumstances of Local 267. The Carter Committee held a hearing in Zanesville, Ohio, at which Mr. Mulford and other officers and members of Local 267 testified. Following the hearing the Carter Committee found that Local 267 was insolvent; that it was continuing to incur debt; that it had failed and refused to honor the reorganization; that, to the detriment of its members, it had refused to participate in the government of the Council; that it had interfered with legitimate Brotherhood collective bargaining agreements; that Mr. Mulford had operated outside his jurisdiction; and that Local 267

had failed to pay its per capita taxes to the South Central Ohio District Council and to the Ohio State Council. The plaintiffs complain that they did not have the opportunity to examine all the evidence offered at the hearing (specifically a booklet of exhibits presented by Mr. Noggle) and that they were not permitted to cross-examine the witnesses who testified. The plaintiffs say further that the Carter Committee was biased against Local 267.

On February 1, 1991, the Carter Committee submitted a written report recommending revocation of Local 267's charter. Local 267 filed objections to the report. The objections were considered by the General Executive Board, with Messrs. Lucassen and Hanahan not participating. The Board dismissed the objections and affirmed the committee's report and recommendation.

On April 22, 1991, the General President of the Brotherhood issued an order dissolving Local 267 effective May 1, 1991. The order permitted the members of Local 267 to become members of any other South Central Ohio District Council local union of their choice. The order further provided that:

> "for purposes of exercising voting and other membership rights under the Constitution and Laws of the United Brotherhood their period of past continuous service in Local 267 shall be counted immediately as membership in whatever Local Union within the South Central Ohio District Council they transfer into."

Section 6A of the Brotherhood's constitution empowers the general president to dissolve, merge or consolidate any local union whenever he finds such action to be in the best interests of the Brotherhood and its members. The only limitation on this power is that the change must preserve the vested rights of the members and the membership rights of the members of the affected local union. The Brotherhood defendants maintain that the permission for members of Local 267 to transfer into other local unions preserved those rights.

The plaintiffs challenge the dissolution order on the grounds that it set up a trusteeship under the LMRDA and that Local 267

1423

was not provided with a fair hearing as required by § 304 of the Act, 29 U.S.C. § 464. Without conceding that a hearing was required, the Brotherhood defendants argue that the hearing before the Carter Committee would satisfy any such requirement. The district court held the dissolution proper but stayed the case pending the appeal.

## II

■ **Adoption of the New Bylaws.** The parties agree that the Brotherhood's constitution requires approval of district council bylaws by the affiliated local unions. They disagree on how such approval is to be obtained. The disagreement turns on the interpretation of sections 26A and 26B of the Brotherhood's constitution. According to the plaintiffs' reading, these sections required a direct vote by the local union membership, as opposed to a vote by the delegates of the local unions.

It is the union's interpretation of the constitution that the courts must evaluate, and not the plaintiffs' interpretation. The Brotherhood interprets sections 26A and 26B as allowing either direct or representative voting on adoption of district council bylaws.

Sections 26A and 26B of the constitution provide as follows:

"A. Where there are two or more Local Unions located in one city, they must be represented in a District Council unless otherwise determined by the General President. District Councils shall be composed exclusively of Delegates from Local Unions of the United Brotherhood. They shall be governed by applicable uniform District Council By–Laws and have the power to make laws and trade rules which in no way conflict with the Constitution and Laws of the United Brotherhood, *and approved by the Local Unions* and the First General Vice–President. The General President shall have the power to order such Local Unions to affiliate with such District Council, and to determine the jurisdictional area and trade autonomy of such District Council subject to appeal. No Local Union may withdraw from such District Council without approval of the General President.

"B. District Councils may be formed in localities other than in cities where two or more Local Unions in adjoining territory request it, or when in the opinion of the General President the good of the United Brotherhood requires it. No Local Union shall affiliate with or withdraw from such a District Council without approval of the General President. District Councils so formed shall be governed by applicable uniform District Council By–Laws and have the power to make laws and Trade Rules which in no way conflict with the Constitution and Laws of the United Brotherhood, *and approved by the Local Unions* and the First General Vice–President." (Emphasis added.)

The plaintiffs focus on the phrase "and approved by the Local Unions" in arguing that the proposed bylaws had to be submitted directly to the members of the local unions for approval. The Brotherhood, as noted above, argues that local unions may give the requisite approval either by direct vote of the membership or by vote of delegates representing the local unions.

■ The standard we apply in reviewing the Brotherhood's interpretation was restated thus in another appeal involving interpretation of the same constitution:

"The standard by which this court reviews a union's interpretation of its constitution is well settled: 'Courts are reluctant to substitute their judgment for that of union officials in the interpretation of the union's constitution, and will interfere only where the official's interpretation is not fair or reasonable.'" *Millwright Local No. 1079 v. United Brotherhood of Carpenters,* 878 F.2d 960, 962 (6th Cir.), *cert. denied,* 493 U.S. 965, 110 S.Ct. 407, 107 L.Ed.2d 373 (1989).

The Brotherhood's interpretation is thus entitled to substantial deference, and will be disturbed only when it is not fair or reasonable.

The district court concluded that the union's reading is not unfair or unreasonable. Sections 26A and 26B do not define the method of approval, as the Brotherhood points out, and since the method of approval is not defined, the constitution may reason-

ably be interpreted to permit approval either by a direct vote of the membership of the local unions or by a vote of delegates selected by the membership of the local unions.

Section 26C of the constitution, another section concerning the jurisdiction and powers of district councils, provides that district council laws regarding certain donations

> "must be adopted by a referendum vote of the members of the Local Unions affiliated with the District Council and approved by the First General Vice–President before becoming law, and their representation shall be according to membership."

The express requirement for a referendum vote of the membership of the locals in section 26C demonstrates that the authors of the constitution knew how to prescribe a membership vote when they thought it necessary. The absence of a similar express requirement in sections 26A and 26B strongly supports the conclusion that direct membership votes are not required for approval of district council bylaws under sections 26A and 26B.

Like the district court, we find ourselves unable to say that the Brotherhood's interpretation of its constitution is unfair or unreasonable. See *American Federation of Musicians v. Wittstein*, 379 U.S. 171, 85 S.Ct. 300, 13 L.Ed.2d 214 (1964) (a representative system of union government is proper so long as elections are fair and membership participation is guaranteed). And because the Council's bylaws were properly adopted, the bulk of the related issues must be decided in favor of the defendants; most of the plaintiffs' claims turn on the proposition that the Council's bylaws were adopted improperly. The issues that remain need not detain us long.

■ **Local 267's Right to Elect a Business Representative.** As to the plaintiffs' reliance on the preservation of "vested rights" in section 6A of the Brotherhood's constitution, the district court found no definition of the term "vested rights." Looking

at the actual mechanics of the loss of the right to elect a business representative, the district court reasoned it was the adoption of the Council bylaws, not the reorganization, that eliminated the Local's right to elect a business representative. Indeed, it was the Capital District Council bylaws that created the right in the first place. Since it would have been permissible to amend the older bylaws to eliminate the right, the substitution of the South Central Ohio District Council for the Capital District Council is irrelevant as far as a change to the bylaws is concerned. Since the new council's bylaws were properly adopted, this prior right of Local 267 was not eliminated improperly.

■ **Failure to Exhaust Internal Union Remedies.** Section 57J of the constitution requires that internal union remedies be exhausted before the commencement of judicial proceedings. The plaintiffs filed a grievance on September 1, 1989, requesting that the Brotherhood set aside the district council bylaws adopted on July 26, 1988. The General President of the Brotherhood denied the grievance on the grounds that it was untimely and was without merit anyway. Local 267 appealed to the General Executive Board, which denied the appeal. In a memorandum opinion and order of March 5, 1991, which addressed the issue of whether the plaintiffs had exhausted their internal union remedies, the district court held that they had; that holding, however, related only to the first through fourth claims in the plaintiffs' original complaint.

The fifth through eleventh claims set forth in an amended complaint filed on July 22, 1991, dealt with working dues, initiation fees, assessments, and a per capita tax imposed on Local 267 and its members. The Council defendants raised the defense of failure to exhaust internal union remedies with respect to these claims, and the district court held for the defendants in a memorandum opinion and order dated June 12, 1992.[1] We affirm

---

1. The court held that the plaintiffs abandoned their ninth cause of action (relating to a strike fund) because they did not address it in their trial brief. However, since there was no evidence that the plaintiffs had taken any steps unique to

the strike fund claim that would have countered the Council defendants' exhaustion defense, there is no compelling reason to treat it differently on review.

on the basis of the reasoning employed by the district court.

**Imposition of Working Dues.** Because of the importance of the issues relating to working dues and the possibility that the plaintiffs' grievance of September 1, 1989, could be construed to include a claim relating to working dues, the district court addressed the merits of the working dues claim.

■ The working dues at issue (3% of the total dues) formerly flowed to the Capital District Council. There was no assertion that the 3% working dues had not been properly approved. The South Central Ohio District Council legally replaced the dissolved Capital District Council. We know of no requirement that the new council again submit the working dues to its affiliated locals when it took over the functions of the Capital District Council.

■ In June of 1989, the working dues of the members of Local 267 (and two other locals in the new district council) were increased from 3% to 4% as a result of a vote (by secret ballot) of the membership of Locals 200, 267 and 967. The plaintiffs claim that the increase was not properly approved because only three of the seven locals voted. However, the locals that were not asked to vote already had working dues greater than or equal to the 4% being sought. In the absence of any evidence that the four non-voting locals were seeking to decrease their working dues rate below 4%, this procedure likely enhanced the plaintiffs' chances of defeating the dues increase. The failure to conduct a district-wide ballot under these circumstances should not invalidate the increase as violative of § 101(a)(3) of the LMRDA, 29 U.S.C. § 411(a)(3), or § 14 of the Council bylaws.

There also is no merit to plaintiffs' further argument that the ballot was misleading, and we affirm the district court's holding concerning working dues. The very case cited in the plaintiffs' brief in No. 92–3646, *Sertic v. Cuyahoga, Lake, Geauga & Ashtabula Counties Carpenters District Council of the United Brotherhood of Carpenters*, 423 F.2d 515, 521 (6th Cir.1970), stands for the proposition that "[u]nion members are entitled under the [LMRDA] to the right of a *meaning-ful* vote on increases in dues or assessments." (Emphasis added.) Here the vote was meaningful and the ballot was clear.

■ **Dissolution of Local 267.** A trusteeship as defined in 29 U.S.C. § 402(h) is: "Any receivership, trusteeship, or other method of supervision or control whereby a labor organization suspends the autonomy otherwise available to a subordinate body under its constitution or by-laws." The Brotherhood did not place the autonomy of Local 267 in suspense. Rather, the Brotherhood dissolved the local and effectively merged it with the other locals of the Council. There was no trusteeship within the meaning of the LMRDA. Local 267 was not entitled to a hearing under 29 U.S.C. § 464 prior to dissolution, and absent a showing of bad faith the local had no cause of action under § 304 of LMRDA. See *Local No. 48, United Brotherhood of Carpenters v. United Brotherhood of Carpenters*, 920 F.2d 1047 (1st Cir.1990); *Brotherhood of Locomotive Firemen & Enginemen v. United Transportation Union*, 82 L.R.R.M. 2421, 1972 WL 1006 (N.D.Ohio), *aff'd*, 471 F.2d 8 (6th Cir. 1972).

■ While Local 267 had no right to a pre-dissolution hearing under the Brotherhood's constitution, moreover, the order of dissolution was preceded by a hearing before the Carter Committee. The district court found no serious flaws with the hearing process that were not at least partially attributable to the plaintiffs' own lack of diligence. Even if a hearing had been required before the union could dissolve Local 267, the district court's findings with respect to the hearing would not have been clearly erroneous.

### III

"There is a well-established, soundly based policy of avoiding unnecessary judicial intrusion into the affairs of labor unions." *Local No. 48, United Brotherhood of Carpenters v. United Brotherhood of Carpenters*, 920 F.2d at 1051. Because the Council's bylaws were adopted in accord with a reasonable interpretation of the Brotherhood's constitution, and because the other issues turn on the plain-

tiffs' erroneous belief that the bylaws were invalid or on erroneous views of the law, the judgment in favor of the defendants in the consolidated cases is **AFFIRMED.** The stay in Case No. C2-91-023 is lifted.